551 A.2d 317

·Brian YOST

v.

UNION RAILROAD COMPANY, Appellant.

Brian YOST

v.

CONSOLIDATION COAL COMPANY and Twin
Rivers Towing Company

v.

UNION RAILROAD COMPANY, Appellant.

Brian YOST, Appellant,

v.

UNION RAILROAD COMPANY.

Brian YOST, Appellant,

v.

CONSOLIDATION COAL COMPANY and Twin
Rivers Towing Company

v.

UNION RAILROAD COMPANY.

Superior Court of Pennsylvania.

Argued Aug. 30, 1988.

Filed Nov. 30, 1988.

238

Gerald C. Paris, Pittsburgh, for appellant (at 01367PGH87) and appellee (at 00184PGH88).

Arthur Cutruzzula, Pittsburgh, for appellant (at 00184PGH88) and appellee (at 01367PGH87).

Before CIRILLO, President Judge, and ROWLEY and TAMILIA, JJ.

TAMILIA, Judge:

These are consolidated appeals filed by two of three parties in this personal injury action. The first appeal at No. 01367 is by defendant Union Railroad Company (hereinafter "Union Railroad") from a judgment entered, after a molded verdict and adjustment for payments made by Union Railroad, in the amount of $120,196.62 in favor of the plaintiff Brian Yost (hereinafter Yost). The second appeal at No. 00184 is by Yost from an Order vacating a portion of the judgment in the amount of $20,483.85, which had been previously awarded for delay damages under Pa.R.C.P. 238.

On the night of November 30, 1983, during the course of his employment as a bargeman for Union Railroad, Yost injured his ankle when he slipped and fell on a piece of coal while traversing a narrow gunwale of a barge. As a result of this incident, Yost brought an action under the Jones

Act, 46 U.S.C.App. § 688, against Consolidation Coal Company (hereinafter "Consolidation"), the owner of the barge, and Twin Rivers Towing Company (hereinafter "Twin Rivers"), a subsidiary of Consolidation and the charterer of the barge upon which he was injured. The cases were consolidated for trial, which resulted in the jury finding Union Railroad 100 per cent negligent with no negligence attributable to Yost, Consolidation or Twin Rivers. The trial court molded the verdict by awarding Yost $20,483.85 for Rule 238 delay damages and awarding Union Railroad $1,904.88 as an offset for payments it had made under the Longshoreman and Harbor Workers' Compensation Act (hereinafter "LHWCA"), 33 U.S.C. § 901 *et seq.;* the trial court adjusted Union Railroad's requested offset downward by 40 per cent for attorney's fees incurred because of the LHWCA claim. The trial court denied Union Railroad's post-trial motions and judgment for Yost was entered on September 16, 1987 for $120,196.62 from which Union Railroad timely appealed. By a subsequent Order, dated January 5, 1988, accompanying its Opinion disposing of Union Railroad's post-trial motions, the trial court struck its earlier award of delay damages in the amount of $20,483.85. Yost appealed this Order in a timely manner.

The first issue presented by Union Railroad concerns the jury's failure to apportion any degree of negligence to Yost, arguing the verdict is contrary to the weight of the evidence and seeking a new trial on this ground.

It is the jury's responsibility as the finder of fact to determine the facts and we will not overturn their findings absent a showing that the verdict is capricious, against the weight of the evidence and resulted in a miscarriage of justice. *Gajkowski v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* 515 Pa. 516, 530 A.2d 853 (1987). In determining whether a verdict is against the weight of the evidence, we must consider all of the evidence, and only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice should a new trial be granted. *Burch v.*

*Sears, Roebuck and Company,* 320 Pa.Super. 444, 467 A.2d 615 (1983); *Weaver v. Firestone Tire and Rubber Company,* 267 Pa.Super. 548, 407 A.2d 45 (1979). A refusal to grant a new trial on weight of the evidence grounds will not be reversed absent an abuse of discretion. *Burch, supra; Yandrick v. Radic,* 291 Pa.Super. 75, 435 A.2d 226 (1981).

At the time of the accident, Yost was employed as a bargeman at Union Railroad's Duquesne Coal Dock, a transfer facility for raw materials. At that facility, barges loaded with coal and other raw materials arrive for unloading to railroad cars for further transportation of the materials to customers. Upon arrival, the loaded barges are placed in the loaded fleet to await transfer by a small tugboat for a large machine known as a continuous unloader, which uses revolving buckets to scoop the materials out of the barge. Once the unloading process is finished the barge is returned via the tugboat to an empty fleet to await pickup by the owner of the barge.

As a bargeman, Yost worked with the captain or pilot of the tugboat and one other bargeman to tie loaded barges to the tug, move them into place and tie them for access to the continuous unloader, and after unloading retie the empty barges to the tug in order to move them to the empty fleet. The bargeman has to board the barges several times during the course of this process to perform his job. The barge in question was a standard 175 feet long with 25 by 10 foot deck areas at either end and a gunwale, measuring 26½ inches wide, running the entire length of the barge on both sides. Spaced along the gunwales at the quarter marks and on the end of the decks are steel timberheads, which are approximately 12 inches in diameter and 16 inches high. The timberheads are directly in the center of the gunwales and are used to tie off the steel cables and ropes which hold the barge in place. Bargemen, such as Yost, use the gunwales as a working surface and walk along them during the course of their jobs. The gunwales have no toeboards or railings and when a barge is empty it rides approximately ten feet out of the water.

242

■ At approximately 8:30 p.m. on the cold evening of November 30, 1983, after completing the task of unhooking the now empty barge, Yost fell while returning along one of the gunwales to the tugboat, which was perpendicular to the barge and "faced up" against it. As he was walking back along the gunwale, Yost placed his left foot over the first quarter timberhead, unfortunately coming down on hidden coal debris lying next to the timberhead, causing Yost to slip and fall, and injuring his ankle. The lighting in the area where the fall occurred was such that it cast shadows on the work area. Although Yost testified he did not look at the exact place on which he placed his foot when the fall occurred, he also testified he felt it would not have been safe for him to watch every step he made, but that he was certainly being more careful than if he were just walking down the street. Additionally, testimony indicated no one was hired or had the duty to clean the gunwales or keep them clear of debris, even though spillage was known to occur.

We will not find contributory negligence as a matter of law unless it is clear there is no room for fair and reasonable disagreement as to its existence. *Eder v. Lansberry,* 459 Pa. 621, 331 A.2d 165 (1975); *Skalos v. Higgins,* 303 Pa.Super. 107, 449 A.2d 601 (1982); *Marinelli v. Montour Railroad Company,* 278 Pa.Super. 403, 420 A.2d 603 (1980). We find the jury's verdict that Yost was not contributorily negligent does not shock our sense of justice under the evidence presented and find no abuse of discretion in the trial court's refusing to grant a new trial. It is within the jury's province to determine the reasonableness of each party's actions and to reconcile conflicting statements. *Seewagen v. Vanderkluet,* 338 Pa.Super. 534, 488 A.2d 21 (1985). We will not disturb the jury's finding on this issue.

■ Next, Union Railroad claims the trial court erred in admitting certain evidence it terms irrelevant and compounded this error by excluding other evidence offered to rebut it. The fundamental consideration in determining the admissibility of evidence is whether the proffered evidence

is relevant to the fact sought to be proved. *Martin v. Soblotney*, 502 Pa. 418, 466 A.2d 1022 (1983). Evidence is relevant if it tends to make a fact at issue more or less probable. *Lewis v. Coffing Hoist Division, Duff-Norton Company, Inc.*, 515 Pa. 334, 528 A.2d 590 (1987); *Martin, supra; Carroll v. Kimmel*, 362 Pa.Super. 432, 524 A.2d 954 (1987). Absent an abuse of discretion rulings on the admission of evidence will not be reversed. *Majdic v. Cincinnati Machine Company*, 370 Pa.Super. 611, 537 A.2d 334 (1988); *Burch v. Sears, Roebuck and Company*, 320 Pa.Super. 444, 467 A.2d 615 (1983).

First, Union Railroad claims testimony by Warren Orr, an employee of Consolidation and former employee of Twin Rivers, concerning the conditions at the Duquesne Coal Dock and how coal was spilled on the gunwales at times other than the night of the accident, was irrelevant. Additionally, Union Railroad claims Orr's testimony concerning how coal is unloaded at places other than the Duquesne Coal Dock was equally irrelevant and inadmissible. We disagree. Orr's testimony established he was a river boat captain familiar with Union Railroad's Duquesne Coal Dock facility. The testimony went to the issue of whether Union Railroad was negligent in failing to maintain the gunwales in a safe condition and whether its methods of operation caused spillage on the gunwales. His testimony regarding other facilities also had bearing on this issue by showing that other facilities avoided the spillage problem by using a different scooping technique. The witness was not testifying about disconnected acts of negligence but, instead, to his observations of Union Railroad's unloading methods. Such testimony is probative of Union Railroad's culpability in its unloading procedures on the night in question.

Second, Union Railroad claims the court erred in refusing admission of what it terms "rebuttal" evidence, in the form of its alleged good safety record at the Duquesne Coal Dock. In connection with this ruling, Union Railroad also contends the court erred in refusing the admission of Yost's employee service record with it. We agree with the

trial court that Union Railroad's past safety record bears no relevance to Yost's injury and is not probative of the accident that occurred on the night in question. Further, any testimony illicited by Yost's counsel on cross-examination concerning Union Railroad's prior safety record at the sites was in response to Union Railroad's direct examination of its own employee, Mr. Babich. Review of the record discloses that Yost's own prior service history was fully examined and we find the trial court's refusal to admit Yost's actual service record or file was not an abuse of discretion considering the prejudicial nature of a notation contained therein, which referred to Yost's being fired years before for drinking on the job.

Union Railroad's next two claims on appeal deal with the trial court's refusal to instruct the jury as requested. "The failure to give a requested point for charge, which is accurate and applicable, is reversible error if the appellant is prejudiced." *Furey v. Thomas Jefferson University*, 325 Pa.Super. 212, 227, 472 A.2d 1083, 1091 (1984); *Gombar v. Schaeffer*, 202 Pa.Super. 282, 195 A.2d 527 (1963). Whether the jury should be instructed on a given point of law depends upon the facts and issues of the case. *Ferrick Excavating and Grading Company v. Senger Trucking Company*, 506 Pa. 181, 484 A.2d 744 (1985); *Beary v. Container General Corporation*, 368 Pa.Super. 61, 533 A.2d 716 (1987). Ultimately, the trial judge is responsible for defining all pertinent questions of law, and all issues which are relevant to pleadings and proof may become the subject of jury instructions. *Bucchianeri v. Equitable Gas Company*, 341 Pa.Super. 319, 491 A.2d 835 (1985); *Perigo v. Deegan*, 288 Pa.Super. 93, 431 A.2d 303 (1981).

■ First, Union Railroad claims the trial court erred in refusing to instruct the jury upon Yost's duty to mitigate damages by having corrective surgery to stabilize his ankle. When determining damages for personal injuries in Pennsylvania, it is proper for a jury to consider the failure of the plaintiff to undergo surgery or medical treatment that an ordinarily prudent man would have submitted to under the

circumstances in an effort to better his condition. *Bartunick v. Koch*, 404 Pa. 1, 170 A.2d 563 (1961); *Potts v. Guthrie*, 282 Pa. 200, 127 A. 605 (1925); *Martin v. Johns–Manville Corporation*, 322 Pa.Super. 348, 469 A.2d 655 (1983); *Downs v. Scott*, 201 Pa.Super. 278, 191 A.2d 908 (1963); *Hilscher v. Ickinger*, 194 Pa.Super. 237, 166 A.2d 678 (1960), *aff'd*, 403 Pa. 596, 170 A.2d 595 (1961). This principle is set forth in the Restatement (Second) of Torts § 918(1) (1979), "one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort," and in comments c and d to that section:

c. *Due care and causation.* The factors determining whether an injured person has used care to avert the consequences of a tort are in general the same as those that determine whether a person has been guilty of negligent conduct.... He is required to exercise no more than reasonable judgment or fortitude; and, if different courses of action are open to him he is not required, as a condition to obtaining full damages, to choose the course that events later show to have been the best. He is not barred from full recovery by the fact that it would have been reasonable for him to make expenditures or subject himself to pain or risk; it is only when he is unreasonable in refusing or failing to take action to prevent further loss that his damages are curtailed.

d. *Pain—Danger.* A person injured by another frequently has great latitude in his selection of means to avoid further harm. Thus in an effort to save a limb, he may employ a competent surgeon for an operation that is both expensive and dangerous to life, and if the operation is unsuccessful, the tortfeasor will be required to pay both for the surgeon's services and for the harm caused by the treatment. On the other hand, it is frequently reasonable for a person threatened by further harm from a tortious act to refuse to subject himself to pain or to a danger of a different kind, which it would be necessary to

undergo if the further harm is to be averted. Thus it may not be unreasonable for a person whose leg has been improperly set by a negligent physician to refuse to submit to a rebreaking of the leg, with its attendant pain and doubtful result, for the purpose of straightening the leg. Likewise, a person who has been made deaf by an injury may not be unreasonable in refusing to submit to an operation in which there is a substantial chance of death or further physical impairment. Nevertheless, there are limits to what one may properly refuse. Thus a person who suffers a broken leg is not entitled to damages for permanent disability ensuing because of his obstinate failure to permit his leg to be set by a competent physician.

*See Martin, supra; Downs, supra.*

■ Upon careful review of the record and, more importantly, the trial transcript and deposition testimony presented to the jury, we find the jury was presented with sufficient evidence to necessitate instructions on Yost's duty to mitigate damages through possible corrective surgery. As explained by Yost's own physician, Dr. Barua, corrective surgery was possible but the possibility of complications existed, such as infection which is inherent in that type of surgery. Dr. Barua testified to a reasonable degree of medical certainty that, barring complications, Yost's ankle would have been stable if Yost had submitted to the recommended surgery and rehabilitation. Even in his opening statement to the jury, Yost's counsel stated there would be medical testimony presented concerning Yost's ability to mitigate damages through a recommended surgical procedure. Additionally, Yost testified he felt surgery might do more harm than good. Under these circumstances it was within the jury's province to decide whether Yost acted reasonably in deciding not to have the surgical procedure Dr. Barua recommended. For this reason, we are compelled to vacate the judgment entered below and order a new trial as to damages in accordance with this decision.

Similarly, we find merit to Union Railroad's second claim of trial court error in failing to charge that the jury should not increase or decrease the amount of its verdict by reason of income tax considerations, because the amount awarded is not taxable income to a plaintiff in this type of case. We reverse on that ground also. This action was brought under the Jones Act, which Act enlarges the rule of liability under the maritime law by conferring on seamen or their representatives the rights afforded by the Federal Employers' Liability Act (hereinafter "FELA"), 45 U.S.C. § 51 *et seq.*, to recover damages resulting from an employer's negligence. As a general matter, FELA and Jones Act cases are subject to state procedural rules, but the substantive law governing them is federal, with the propriety of jury instructions concerning the measure of damages being an issue of "substance" and determined by federal law. *St. Louis Southwestern Railway Company v. Dickerson*, 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985); *see* 32 Am.Jur.2d *Federal Employers' Liability and Compensation Acts* § 60 (1982). In *Norfolk and Western Railway Company v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), *reh'g denied*, 445 U.S. 972, 100 S.Ct. 1667, 64 L.Ed.2d 250 (1980), the United States Supreme Court held that the state trial court erred in refusing a brief jury instruction as to the nontaxability of a FELA damage award. The Court recognized the tax consciousness of the American public and concluded that although the law was perfectly clear that the amount of any damages received on account of personal injuries or for wrongful death is not taxable income, it is possible that members of the jury may not be cognizant of such specifics in the law and a simple instruction would not be prejudicial to either party, "but would merely eliminate an area of doubt or speculation that might have an improper impact on the computation of the amount of damages." *Id.* at 498, 100 S.Ct. at 760, 62 L.Ed.2d at 696. Accordingly, we find the trial court erred in refusing such an instruction and on remand for a trial on damages, we direct that an instruction consistent with *Liep-*

248

*elt* be given.[1]

██ Union Railroad's remaining claim concerns the trial court's reduction of the verdict for previous LHWCA payments made by Union Railroad to Yost. Union Railroad paid $3,174.80 to Yost as compensation under the LHWCA and sought to reduce the verdict by that amount after trial. The trial court reduced the verdict by $1,904.88 or 60 per cent of the total amount Union Railroad requested, determining the other 40 per cent was not appropriate as a set off but was instead "reasonably and fairly attributable to attorney's fees" (Slip Op., McGinley, J., 1/5/88, p. 5). We find the trial court's refusal to set off the entire amount of LHWCA payments to be reversible error. A liability award under the Jones Act for personal injuries received is appropriately reduced by the amount of benefits paid by the defendant under the LHWCA. *Cheuvront v. Pittsburgh & Lake Erie Railroad Company,* 477 F.Supp. 193, 197 (W.D. Pa.1979). Such a reduction prevents a windfall or double recovery to the plaintiff and promotes the voluntary payment of LHWCA benefits. In fact, in this case no attorney's fees were incurred in collecting LHWCA benefits because Union Railroad voluntarily made the payments prior to Yost obtaining counsel.

██ The final issue on appeal is Yost's sole claim for Pa.R.C.P. 238 delay damages, which the trial court first awarded and later vacated after determining Union Railroad "was not responsible for any delay" (Slip Op. at 6). Normally, our grant of a new trial on damages would render moot a claim for Rule 238 delay damages because the essential ingredient in determining any such award, i.e. the jury's award, becomes unknown until the new trial is completed. However, upon considering recent case law by the United States Supreme Court, we can dispose of Yost's claim. In *Monessen Southwestern Railway Company v.*

1. We note that the proposed instruction in *Liepelt* simply stated, "your award will not be subject to any income taxes, and you should not consider such taxes in fixing the amount of your award." *Liepelt, supra* at 492, 100 S.Ct. at 757, 62 L.Ed.2d at 693.

*Morgan,* 486 U.S. —, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988), filed subsequent to the parties' briefs in this appeal, the United States Supreme Court reversed our Pennsylvania Supreme Court, finding the availability of prejudgment interest under Pa.R.C.P. 238, as part of the determination of the proper measure of damages in FELA actions, is a matter of federal law and held that federal law does not authorize awards of prejudgment interest in FELA actions. In reaching this holding, the Court in *Morgan* detailed the history of FELA and Congress' failure, either through its original enactment of FELA or subsequent amendments, to expressly dispense with the well-established common law doctrine barring the recovery of prejudgment interest and Congress' failure to disturb 70 years of consistent judicial interpretation that prejudgment interest is not available under FELA. In light of *Morgan,* we find Yost's claim for Rule 238 delay damages is without merit.

As to the appeal at No. 01367 Pittsburgh, 1987, the judgment is affirmed in part and reversed in part; we remand for a new trial as to damages only, consistent with this Opinion. As to the appeal at No. 00184 Pittsburgh, 1988, the Order vacating the award of delay damages is affirmed.

JURISDICTION RELINQUISHED.