589 A.2d 747

**Christopher F. PAGESH, Appellant,**

v.

**Paul K. UCMAN, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 9, 1991.

Filed April 19, 1991.

550

P. Thomas Woodman, Pittsburgh, for appellant.
David R. Johnson, Pittsburgh, for appellee.

Before TAMILIA, POPOVICH and JOHNSON, JJ.

POPOVICH, Judge:

This is an appeal from a judgment entered in the Court of Common Pleas of Allegheny County in favor of the defendant/appellee Paul Ucman, Jr. and against the plaintiff/appellant Christopher Pagesh.  We affirm.

The instant litigation arises out of a water-skiing accident in which Pagesh was injured.  The record supports the trial court's version of the basic facts, which are as follows:

The Plaintiff, Christopher F. Pagesh, injured one of his legs seriously when he was water skiing with three other young men including his brother David and the defendant, Paul K. Ucman, Jr., who was taking his turn at operating the small boat at the time of the accident.  The other two defendants were not present and had nothing to do with the case except owning the boat.  The plaintiff's leg got twisted somehow, which is said to be very unusual in water skiing which makes it all the more regrettable but it was transparent in the evidence that there was no legal fault on the part of the defendant.  The basic movement of water skiing which is simply to coast along in a straight line behind the boat becomes boring to active young people very quickly and therefore they seek more sporting variations of action.  A standard variation—which most of us have observed from time to time—is to operate the boat in circles to make waves and then pull the skier through the waves.  The challenge is to maintain your balance as you bounce up and down between the troughs and crests and in a sense it sometimes is a sort of contest between the operator of the boat and the skier.

These four young men had been taking turns doing this and it was the plaintiff's final turn of the day and, of course, he was doing exactly what he wanted to do.  His protests to the contrary undoubtedly were as incredible to the jury as they were to the trial judge and the matter

was sealed when a recorded statement of his brother David was produced, which was taken before the brother was aware of the financial consequence of telling the truth and which completely supported the defense.[1]

Trial court opinion, at 1–2. Following a jury trial, a verdict was reached in favor of the defendant Ucman. Post-trial motions were denied. This appeal followed.

Pagesh has raised four issues for our consideration:

1. Did the trial court err in allowing the jury to consider the defense of assumption of the risk in the trial of appellant's personal injury action?

2. Did the trial court err during jury instructions in commenting on the credibility and weight to be given by the jury to appellant's brother's testimony at appellant's personal injury action?

3. Did the trial court err in refusing to allow appellant's use of expert testimony at [the] trial of appellant's personal injury action?

4. Did the trial court err in refusing to charge the jury pursuant to appellant's suggested points for charge?

Appellant's brief, at 3.

At the onset, we note that issue number 2 is waived. The law is clear that any objections to the jury charge must be lodged at trial and on the record. *See Commonwealth v. Pigg*, 391 Pa.Super. 418, 571 A.2d 438 (1990).[2] Our Rules

---

1. Despite our own efforts, we have been unable to procure the trial transcripts in this case. Thus, we adopt the trial court's version of the facts. We note that it is the appellant's responsibility to provide this Court with a complete and comprehensive record for purposes of appeal. *Commonwealth v. Williams*, 357 Pa.Super. 462, 516 A.2d 352 (1986); *see also* Pa.R.A.P. Ch. 19—Preparation and Transmission of Record and Related Matters. Absent such a record, we base our decisions upon the materials that we have, and the trial court's assertions.

2. In *Commonwealth v. Pigg, supra,* this Court held that because trial counsel did not raise a specific objection to the trial court's jury charge, the issue was not properly preserved for appellate review. In a footnote, this Court stated, "[a]lthough [the attorney] filed supplemental post-trial motions alleging the ambiguity of the trial court's charge, such motions will not preserve a challenge to the charge

of Appellate Procedure also provide for this requirement. Pa.R.A.P. 302 reads:

(a) General Rule. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.

(b) Charge to Jury. A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of.

The official comment to Rule 302 states, "[t]his rule sets forth a frequently overlooked requirement." *See Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974); *Commonwealth v. Light,* 458 Pa. 328, 326 A.2d 288 (1974). *See also Broxie v. Household Finance Co.,* 472 Pa. 373, 372 A.2d 741 (1977) (party must specifically object to charge as given); *Slater v. Pennsylvania Power Co.,* 383 Pa.Super. 509, 557 A.2d 368 (1989) (accord); *Vernon v. Stash,* 367 Pa.Super. 36, 48, 532 A.2d 441, 447 (1987) ("[o]bjections not appearing in the record may not be considered on appeal.").

We have reviewed the jury charge in its entirety. At the conclusion of the trial court's instructions, the trial judge asked counsel if there was "[a]nything you want to bring up before they go out?" N.T., September 13–15, 1898, Jury Charge, at 19. Trial counsel did not raise the merits of issue number 2, above. Accordingly, this issue is waived.[3] *See also* Pa.R.Civ.P. 227(b).

For the sake of convenience, we will now address Pagesh's fourth issue on appeal, to wit, that the trial court erred in failing to charge the jury in accordance with Pagesh's proposed points for charge. Although the trial court did not use language identical to Pagesh's, we are satisfied that the jury instructions were clear and proper.

which has not first been raised by objection in open court." *Id.,* 391 Pa.Super. at 429 n. 1, 571 A.2d at 443 n. 1.

**3.** The trial court noted in its opinion that no exception was taken to the charge. *See* Trial court opinion, at 3.

The law is established in this area. Our scope and standard of review was set forth in *Yost v. Union R. Co.,* 380 Pa.Super. 236, 551 A.2d 317 (1988):

> The failure to give a requested point for charge, which is accurate and applicable, is reversible error if the appellant is prejudiced. Whether the jury should be instructed on a given point of law depends upon the facts and issues of the case. Ultimately, the trial judge is responsible for defining all pertinent questions of law, and all issues which are relevant to pleadings and proof may become the subject of jury instructions.

*Id.,* 380 Pa.Superior Ct. at 244, 551 A.2d at 321 (citations omitted). Similarly, in *Commonwealth v. Myers,* 376 Pa.Super. 41, 545 A.2d 309 (1988), this Court stated:

> In reviewing jury instructions to determine whether reversible error has been committed by a trial court, we consider the charge as a whole. Error will not be predicated on isolated excerpts. Rather, it is the general effect of the charge that controls.

*Id.,* 376 Pa.Superior Ct. at 50, 545 A.2d at 314 (citations omitted). *See also Sweitzer v. Dempster Systems,* 372 Pa.Super. 449, 453, 539 A.2d 880, 882 (1988) (where the sufficiency of the jury charge is challenged, this Court must examine the instructions in their entirety against the background of the evidence); *Bohner v. Stine,* 316 Pa.Super. 426, 463 A.2d 438 (1983) (jury charge must be analyzed in context). *See also Murphy v. Publicker Industries, Inc.,* 357 Pa.Super. 409, 516 A.2d 47 (1986).

A trial court maintains wide discretion in phrasing points for charge and may use its own words as long as the issues and questions to be resolved are clear. *See Commonwealth v. Ohle,* 503 Pa. 566, 582, 470 A.2d 61, 70 (1983); *Commonwealth v. Jordan,* 407 Pa. 575, 587, 181 A.2d 310, 316 (1962). Of course, these rules have been applied in the context of civil as well as criminal cases. *See Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985). *See also Stevenson v. General Motors Corp.,* 513 Pa. 411, 521 A.2d 413

(1987) (sets forth our scope of review in assessing a trial court's denial of a motion for a new trial).

With these standards in mind, we have reviewed the jury instructions and conclude that the trial court adequately covered the pertinent legal issues. The mere refusal of the trial court to use the exact language supplied by the parties is not necessarily a ground for reversal. *Kopar v. Mumono*, 419 Pa. 601, 215 A.2d 641 (1966); *Fish v. Gosnell*, 316 Pa.Super. 565, 463 A.2d 1042 (1983). We reject Pagesh's claim.

In conjunction with the above assertion, Pagesh's first claim of error is that the trial court wrongly allowed the jury to consider the defense of assumption of the risk.[4] Pagesh asserts the inapplicability of the defense, or more pointedly, the misapplicability of the doctrine to his case.

The majority of Pagesh's argument is more focused, however. He posits that the doctrine is confusing, especially in light of the enactment of the Comparative Negligence Statute, and that it should be abolished. While we are sympathetic to Pagesh's case, and to his frustration regarding this issue, the fact remains nevertheless that the assumption of the risk doctrine is still alive and well in Pennsylvania. *See Malinder v. Jenkins Elevator & Machine Company*, 371 Pa.Super. 414, 427, 538 A.2d 509, 516 (1988) (en banc). Thus, despite the valiant effort by Pagesh to have the doctrine declared null and void or at least subsumed by the Comparative Negligence Statute, we decline to take that step presently.

As the trial court recognized, this Court has recently discussed "assumption of the risk" in *Malinder v. Jenkins*

4. In *Malinder v. Jenkins Elevator & Machine Company*, 371 Pa.Super. 414, 538 A.2d 509 (1988), this Court, sitting en banc, stated, "[t]he basic premise of the doctrine of assumption of the risk is that a party who voluntarily and knowingly assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover damages for such harm." *Id.*, 371 Pa.Superior Ct. at 418, 538 A.2d at 511. *See also Hendschuh v. Albert Development*, 393 Pa.Super. 444,

*Elevator & Machine Company,* 371 Pa.Super. 414, 538 A.2d 509 (1988) (en banc) and *Howell v. Clyde,* 383 Pa.Super. 611, 557 A.2d 419 (1989) *appeal granted* 525 Pa. 612, 577 A.2d 544 (1990).[5] Contrary to Pagesh's assertion that he "could not have assumed the risk of an activity he did not know was going to occur,"[6] we are persuaded by the appellee's argument that Pagesh sustained an injury that resulted from an ordinary risk associated with waterskiing. Although it is unfortunate that the accident happened, Pagesh, a skier since 1980, knew the dangers inherent in the activity.[7] He voluntarily chose to ski and willingly, as far as we can discern from the record certified to us, accepted the risks. As Ucman aptly suggested in his brief,

> ... Pagesh was well aware of any alleged danger, and he had several opportunities to avoid any aspect of the alleged danger. He could have signaled the defendant to slow down, stop or change the course of the boat. In addition, Pagesh could have dropped the rope being used to pull him. Pagesh elected voluntarily to continue skiing, and to attempt to stay upright despite any turbulence that existed. Pagesh accepted the challenge, kept trying, and never attempted to stop or desired to stop. Thus, a jury could reasonably conclude that Pagesh, by failing to use the means available to avoid any danger with which he was presented, assumed the risk of injury.

574 A.2d 693 (1990) (thoroughly discusses the assumption of the risk doctrine).

5. In *Howell v. Clyde, supra,* this Court declared:
> Taken together, these cases do give one beacon of guidance for the present case. That is, the assumption of the risk defense, at the non-suit stage at trial, is generally limited to situations where no duty of care is owed to the plaintiff. In order to receive a non-suit based on the assumption of risk defense, it must be established that the defendant has breached no duty of care owed to the plaintiff. Where the duty of care owed by the defendant has been breached, the question of whether the plaintiff has assumed the specific risk of injury should be submitted to the jury. We do not decide today whether a non-suit should be granted in a situation where the defendant owed a duty of care to the plaintiff and there is no question that the plaintiff knowingly accepted the risk of injury.
> *Id.,* 383 Pa.Super. at 614–15, 557 A.2d at 421.

6. Appellant's brief, at 13.

7. *See* Deposition of Christopher Pagesh, May 20, 1987, at 33–34.

Appellee's brief, at 13. *See Bowser v. Hershey Baseball Association*, 357 Pa.Super. 435, 516 A.2d 61 (1986); *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 85, 394 A.2d 546, 551 (1978). *See also Mike v. Lebanon Miridites League*, 421 Pa. 217, 218 A.2d 814 (1966). Thus, we must conclude that the trial court did not err in instructing the jury regarding the assumption of the risk principle. *Cf. Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525 (1988) (discusses concepts of "no duty" and the assumption of the risk defense); *see also id.*, 374 Pa.Superior Ct. at 140, 542 A.2d at 536 ("It is true that defendants have no duty to protect roller skaters against the typical risks of roller skating, such as falling down or being bumped by other skaters. These are risks general to skating at any rink."). *See Missar v. Camelback Ski Resort*, 30 Pa.D & C 3d 579 (1984).

■ Finally, while Pagesh contends that the trial court should not have compared his injury to those sustained during the participation in other sports, our perusal of the law compels a different finding. *See Bowser v. Hershey Baseball Association*, 357 Pa.Super. 435, 516 A.2d 61 (1986) (member of baseball association assumed the risk of injury when he voluntarily participated in team tryouts); [8] *Podvin v. Somerton Springs Swim Club, Inc.*, 406 Pa. 384, 178 A.2d 615 (1962) (plaintiff who sustained injuries after slipping on sand on the volleyball court assumed the risks of the game); *Pestalozzi v. Philadelphia Flyers Ltd.*, 394 Pa.Super. 420, 576 A.2d 72 (1990) (plaintiff assumed the risk of being struck by a flying puck when he attended a hockey game).[9] Here, we note only that the assumption of the risk

**8.** In *Bowser, supra.*, this Court held:
   There is an additional reason why Bowser cannot recover. When he agreed to participate on the field during the baseball tryouts, he voluntarily exposed himself to the risks inherent in baseball. One of the risks inherent in baseball is being hit by a batted ball. [Citation omitted.] Having voluntarily exposed himself to the risk of being hit by a batted ball, Bowser cannot recover from the sponsor of the baseball event for injuries caused by this very risk.
   *Id.*, 357 Pa.Super. at 440, 516 A.2d at 63.

**9.** Each of these cases sounded in allegations of negligence (as opposed to strict liability).

doctrine has been applied in situations involving injuries sustained during sporting events. The trial court's use of analogy was both understandable and justified. *See Podvin v. Somerton Springs Swim Club, Inc.*, 406 Pa. 384, 386 n. 2, 178 A.2d 615, 617 n. 2 (1962).

As for Pagesh's specific claim (that is, the trial court should not have compared the hazards that Pagesh encountered to the dangers endured in football or to the injuries that could be suffered in croquet), we will not discuss the merits further, in part because we found the analogies proper, and in part because Pagesh failed to object to the trial court's classifications at trial. By not preserving this issue on the record following the trial court's charge, Pagesh has now waived his right to challenge this portion of the charge. *See* Pa.R.A.P. 302(b). *See* Pa.R.Civ.P. 227(b). *See also* discussion relating to objections following the jury charge, *supra*. *See Slater, supra*. and *Vernon, supra*.

Pagesh's final contention is that the trial court erred in excluding at trial the proposed expert testimony of Dr. Della–Giustina. Dr. Della–Giustina would have testified as to water dynamics and boating safety. *See* Appellant's brief, at 16.

Again, the law is well-settled. The decision to admit or exclude evidence rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Commonwealth v. Meadows*, 381 Pa.Super. 354, 553 A.2d 1006 (1989). "The test to be applied in determining the admissibility of such evidence involves weighing the inflammatory nature of this evidence against its essential evidentiary value." *Id.*, 381 Pa.Superior Ct. at 366, 553 A.2d at 1012 (citations omitted). *See Concorde Investments, Inc. v. Gallagher*, 345 Pa.Super. 49, 56, 497 A.2d 637, 641 (1985) (same standard); *Walasavage v. Marinelli*, 334 Pa.Super. 396, 483 A.2d 509 (1984) (same). In *Concorde Investments, supra*, this Court stated, "[t]he court may exclude evidence that is irrelevant, confusing, misleading, cumulative or prejudicial." *Id.*, 345 Pa.Super. at 56, 497 A.2d at 641. *See also Keough v. Republic Fuel &*

*Burner Co.*, 382 Pa. 593, 116 A.2d 671 (1955); *Yost v. Union R. Co.*, 380 Pa.Super. 236, 551 A.2d 317 (1988) (defines relevant evidence).

■ We have reviewed Dr. Della–Giustina's report and must agree with the appellee that Dr. Della–Giustina reveals the apparent and does not set forth or explain any matters that would aid the jury in their understanding of the case or that would augment their appreciation of the evidence presented at trial. The report is devoid of any information that would fall outside of the realm of common knowledge. *See Bolus v. United Penn Bank*, 363 Pa.Super. 247, 272, 525 A.2d 1215, 1228 (1987). Evidently, the trial court considered the relevance and probative value of Dr. Della–Giustina's report. In its opinion, the trial court stated, "[c]omplaint was also made that the Court should not have excluded the testimony of an expert in water skiing. Of course, no expert is needed in an obvious matter of this nature and the expert's report was a dissertation of an extremely objectional nature." Trial court opinion, at 2.

This Court has reviewed the lengthy record here, as well as the comprehensive briefs filed by the parties and the applicable law. After consideration, we find no error in the trial court's decision to preclude Dr. Della–Giustina's "expert" testimony. Certainly, the jury was capable of understanding what happened to Pagesh without further explanation of why water accidents occur. *See Collins v. Zediker*, 421 Pa. 52, 53, 218 A.2d 776, 777 (1966) ("[p]henomena and situations which are matters of common knowledge, may not be made the subject for expert testimony."). On the facts of this case, we affirm the trial court's judgment.

Affirmed.