**Swords v. Bucher**

C.P. of Adams County, no. 00-S-516.

*Dale E. Anstine,* for plaintiff.
*George R. Zacharkow,* for defendant.

KUHN, *P.J.,* May 29, 2002—Before the court is defendant's motion for summary judgment. For the reasons set forth herein, said motion is granted.

The case involves a dispute with regard to defendant's alleged responsibility for injuries plaintiff sustained during a tubing[1] accident. The factual background has been gathered from the pleadings, depositions[2] and exhibits.

---

1. "[T]ubing [is] an activity whereby an individual rides on an inner tube while being pulled by a boat." *Sebasta v. Holtsberry,* 2000 Ohio App. Lexis 4017.
2. Depositions were taken of plaintiff and defendant.

## FACTUAL BACKGROUND

On July 4, 1998, plaintiff and two friends attended a cookout party at Lake Meade, Adams County, Pennsylvania. Defendant and his family also reside at Lake Meade and are neighbors of the family that hosted the cookout. On the afternoon of July 4, 1998, one of the hosts of the cookout was giving tube rides to his children and some of his guests. Defendant had also taken his sons tubing on the lake that afternoon and volunteered to give tube rides to some of his neighbor's guests.

About 20 minutes after plaintiff and his friends arrived at the cookout, they went to the lake to go tubing. Defendant was returning to the dock at approximately the same time with his wife and sons who got off the boat and went to the cookout. Defendant stayed on the boat and offered tube rides to some of the guests who were waiting on the dock. Plaintiff, who had not met defendant before this time, boarded the boat along with a few other guests. Defendant had a two-person tube which was connected by a 75-foot line to the rear center of the boat. At some point, plaintiff and another guest, Ron Enzer, got on the tube together.[3] Plaintiff was lying on his stomach on the left side of the tube and Enzer was on the right side. One of plaintiff's friends was acting as the spotter. Defendant pulled plaintiff and Enzer in a counterclockwise direction around the lake. When de-

---

3. There is conflicting testimony with regard to whether defendant gave other guests a ride on the tube before giving plaintiff and Enzer the ride during which the incident in question occurred. There is also conflicting testimony regarding whether or not plaintiff served as a "spotter" (someone other than the operator of the boat who observes the activity of the tubers) for other tubers prior to his tube ride.

fendant got to the far end of the lake, he turned the boat to the left in order to begin the trip back toward the dock. When the boat turned to the left, the tube swung to the right.[4] As they turned the corner, Enzer lifted up his side of the tube, such that he was leaning toward plaintiff, allegedly to keep the tube from catching in the water. Nevertheless, Enzer's edge of the tube caught the water, and the tube flipped. At that time, plaintiff's head allegedly struck Enzer's shoulder. Plaintiff states that after falling off the tube, his eyes and head hurt. He also states that he was "dazed and confused," that everything was "hazy and fuzzed away," and that he was "slow comprehending things."

Plaintiff maintains that he was helped into the boat immediately after falling off the tube, and that he was taken back to the dock where he sat alone for some time. Plaintiff states that, after the tubing accident, he suffered from a headache, blurred-vision and dizziness for the remainder of the day but that he did not seek medical attention until July 13, 1998. A CT scan and an MRI were both negative.

Plaintiff maintains that he has suffered from aches and pains in his neck and lower back, tingling in his fingers, headaches at night, and problems with balance following the tubing accident. He alleges that he has incurred medical expenses and suffered reduced income as a result of the accident.

Plaintiff maintains that defendant was operating the boat in a reckless and negligent manner at the time the

---

4. When a turn is executed, the tube continues on in the opposite direction, until the turn is completed and it realigns itself behind the boat. This action is termed the "whip."

tube flipped on July 4, 1998. Plaintiff alleges that defendant was traveling at a high rate of speed and cutting across the wakes from other boats. Plaintiff further alleges that defendant was under the influence of alcohol to a degree which rendered him incapable of safely operating his boat.

## PROCEDURAL BACKGROUND

Plaintiff filed a complaint against defendant alleging that defendant was negligent and reckless in the operation of his boat, and that, as a result, plaintiff sustained injuries and damages. More specifically, plaintiff alleges that defendant's negligence consisted of the following:

(a) Failing to exercise reasonable care in the operation of his boat;

(b) Operating his motorboat in careless disregard for the safety of the plaintiff;

(c) Operating his motorboat at an excessive rate of speed;

(d) Operating his motorboat while under the influence of alcoholic beverages to a degree which rendered him incapable of safely operating the boat;

(e) Operating his motorboat when the defendant knew, or should have known, that he was unfit to do so;

(f) Failing to exercise reasonable care in the operation of his motorboat by cutting across the wakes of other watercraft; and

(g) Violating 30 Pa.C.S. §5501(a), §5501(b) and §5502(a)(1).

Defendant's motion for summary judgment contends that plaintiff's claim is barred by the doctrine of assump-

tion of risk, as set forth in the Restatement (Second) of Torts §496A. Defendant maintains that plaintiff assumed the risk of a sporting activity in which he voluntarily took part. Furthermore, defendant alleges there is no evidence in the record to support a conclusion that the alleged conduct was outside the boundaries of the sport. Defendant also argues that plaintiff's allegations concerning the consumption of beer are not admissible in evidence and do not undermine plaintiff's assumption of risk because mere consumption of alcohol is inadmissible unless it reasonably establishes intoxication.

## DISCUSSION

Summary judgment is granted:

"[W]hen the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact. The moving party has the burden of proving the nonexistence of any genuine issue of fact. The non-moving party must demonstrate that there is a genuine issue for trial and may not rest on averments in its pleadings. The trial court must resolve all doubts against the moving party and examine the record in the light most favorable to the non-moving party. Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law." *Davis v. Resources for Human Development Inc.,* 770 A.2d 353, 356-57 (Pa. Super. 2001).

Furthermore, "unsupported assertions of conclusory allegations cannot create genuine issues of material fact." *Superka v. Valley Forge Life Insurance Co.,* 44 D.&C.4th 92, 94-95 (1999), citing *McCain v. Pennbank,* 379 Pa.

Super. 313, 318-19, 549 A.2d 1311, 1313-14 (1988). Pennsylvania Rule of Civil Procedure 1035.4 states that supporting and opposing affidavits must set forth "such facts as would be admissible in evidence." The rule further states that the court may permit affidavits to be supplemented or opposed by depositions. Therefore, in ruling on defendant's motion for summary judgment, this court can consider the deposition testimony of plaintiff and defendant only to the extent that such testimony sets forth matters which would be admissible into evidence. See *Todd Heller Inc. v. United Parcel Service Inc.*, 754 A.2d 689, 698 (Pa. Super. 2000), citing *McFadden v. American Oil Company*, 215 Pa. Super. 44, 50, 257 A.2d 283, 287 (1969).

First, the court will address whether evidence of intoxication is sufficient enough to be considered in determining whether plaintiff's cause of action is barred by the defense of assumption of the risk. The Pennsylvania Superior Court has stated, "when recklessness or carelessness is at issue, proof of intoxication is relevant, but the mere fact of consuming alcohol is not admissible, being unfairly prejudicial, unless it reasonably establishes intoxication." *Cusatis v. Reichert*, 267 Pa. Super. 247, 249-50, 406 A.2d 787 (1979).

Pennsylvania courts have indicated that something more than a "suggestion of intoxication" is necessary in order for evidence to be admissible. For example, in *Burke v. Buck Hotel Inc.*, 742 A.2d 239 (Pa. Commw. 1999), a party was involved in a traffic accident, and was alleged to have been driving while intoxicated. A police officer testified that the driver had a strong odor of alcohol about her breath and person following the ac-

cident. He also stated that she had "watery, glassy" eyes, that she needed support while she stood, and that she had a "slight wobble to her gait." *Id.* at 242. Furthermore, the driver admitted that she had been drinking prior to the accident. *Id.* at 243. The court held that this evidence was admissible because it reasonably established the driver's intoxication. The court based its decision in part on the Superior Court's holding in *Ackerman v. Delcomico,* 336 Pa. Super. 569, 486 A.2d 410 (1984). In that case, there was corroborated testimony that a party had been drinking heavily in the late afternoon and evening before an accident. *Ackerman v. Delcomico, supra* at 575, 486 A.2d at 413. Furthermore, there was corroborated testimony that the party had a "strong odor of alcohol and slurred speech" after the accident. *Id.* The court stated that the evidence established "much more than a suggestion of intoxication." *Id.* The court therefore concluded that the evidence of the party's intoxication was properly admitted, and was not prejudicial. *Id.*

As noted above, plaintiff alleges that on July 4, 1998, defendant was "under the influence of alcoholic beverages to a degree which rendered him incapable of safely operating the boat." Plaintiff further alleges that defendant was negligent in operating his boat "when the defendant knew, or should have known, that he was unfit to do so." Plaintiff provides little support for these allegations.

Plaintiff stated in his deposition testimony that defendant had consumed alcoholic beverages throughout the day up until the time of plaintiff's accident. Plaintiff specified that he saw defendant drinking beer while he was operating the boat; however, plaintiff does not know

whether defendant drank more than one beer during that time. Defendant admitted that he drank four or five beers during the course of the afternoon of July 4, but plaintiff has provided no evidence to suggest that defendant consumed those four or five beers prior to plaintiff's tube ride that afternoon.[5] In fact, plaintiff does not contradict defendant's testimony that he was at work during the morning of July 4 prior to going out on the lake. Furthermore, there is no evidence that defendant was slurring his words or having trouble functioning before or while he was operating the boat. In his deposition testimony, plaintiff admitted that he never observed defendant behaving in such a manner. Plaintiff further admitted that he had no contact with defendant prior to boarding defendant's boat that afternoon.

Plaintiff states that he believes defendant was under the influence of alcohol at the time the tube flipped because defendant was "too intense of a driver," and because he was "too rammy," and "too egoish." Plaintiff alleges that such behavior is evidence of defendant's intoxication at the time the tube flipped; however, plaintiff provides no further support for this allegation. Plaintiff did not present any evidence, other than plaintiff's own deposition testimony, which would suggest that defendant was actually operating the boat at an excessive speed when the tube flipped. Plaintiff states that he believes

5. Plaintiff alleges that defendant admitted in his deposition testimony that he consumed four or five beers prior to operating the boat. The transcript of the deposition testimony does not appear to be consistent with plaintiff's allegation. Defendant does admit that he consumed four or five beers; however, he does not indicate when he consumed those beers. (Transcript of defendant's deposition taken December 19, 2000—p. 21.)

the boat was traveling at approximately 35 miles per hour at the time the tube flipped. When asked how he came to that conclusion, plaintiff answered, "[t]hrough the years of everything I have done before, knowing at that specific time we were going faster than we should have been." Plaintiff was also asked what speed he believed the boat should have been traveling. Plaintiff answered, "slower than that to get whipped into a corner at 180 degrees." There was no speedometer or tachometer on the tube. Defendant maintains that the boat could not have been traveling at a speed of 35 miles per hour because the engine is 135 horsepower and it could not achieve a speed of 35 miles per hour with two grown adults on the tube and others in the boat at the time.

Plaintiff has not produced sufficient evidence to "reasonably establish" that defendant was intoxicated while operating his boat on July 4. Therefore, the court finds plaintiff's allegations concerning defendant's consumption of alcohol not admissible in evidence because they would be unfairly prejudicial. Consequently, this court cannot consider those allegations in ruling on defendant's motion for summary judgment. This determination does not speak to the merits of plaintiff's allegations.

Defendant also argues that plaintiff's claim is barred by the doctrine of assumption of risk. Defendant alleges that plaintiff assumed the risk of a sporting activity in which he voluntarily took part, and that plaintiff cannot shift responsibility for the consequences of his choice. The doctrine of assumption of risk is set forth in the Restatement (Second) of Torts §496. Section 496A states, "a plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defen-

dant cannot recover for such harm." Comment c.2 to section 496A further states that one meaning of the term "assumption of risk" is "that plaintiff has entered voluntarily into some relation with the defendant which he knows to involve the risk, and so is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances. Thus a spectator entering a baseball park may be regarded as consenting that the players may proceed with the game without taking precautions to protect him from being hit by the ball. Again the legal result is that the defendant is relieved of his duty to the plaintiff."

With regard to this implied assumption of risk, section 496C provides, "a plaintiff who fully understands a risk of harm to himself or his things caused by the defendant's conduct or by the condition of the defendant's land or chattels, and who nevertheless voluntarily chooses to enter or remain, or to permit his things to enter or remain within the area of that risk, under circumstances that manifest his willingness to accept it, is not entitled to recover for harm within that risk."

The Supreme Court of Pennsylvania has held that comment c.2 refers to a situation in which a plaintiff has "voluntarily and intelligently undertaken an activity which he knows to be hazardous in ways which subsequently cause him injury." *Howell v. Clyde,* 533 Pa. 151, 161, 620 A.2d 1107, 1112 (1993). The court further held that the basis for this type of assumption of risk is that, "as a matter of public policy one who chooses to take risks will not then be heard later to complain that he was injured by the risks he chose to take and will not be permitted to seek money damages from those who might

otherwise have been liable . . . the plaintiff may or may not have been negligent in encountering the risk. He is barred from recovery not because of his negligence, but because of the policy that a person may not recover for injuries which he himself has chosen to risk." *Id.* at 161-62, 620 A.2d at 1112.

The court may determine that the defendant was relieved of his responsibility to the plaintiff only if "reasonable minds could not disagree that the plaintiff deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury." *Id.* at 162, 620 A.2d at 1113.

Plaintiff notes that the doctrine of assumption of risk has been questioned by Pennsylvania courts and has only narrowly avoided abolishment. While this is an accurate assessment of the doctrine's history, as recently as March 2000, the Pennsylvania Superior Court has stated, "until our Supreme Court or our legislature abrogates assumption of risk in negligence cases, the doctrine remains viable in Pennsylvania." *Staub v. Toy Factory Inc.,* 749 A.2d 522, 528 (Pa. Super. 2000). Our Supreme Court's ruling in *Howell v. Clyde* marked a turning point with regard to the assumption of risk doctrine.[6] The *Howell* decision essentially abolished assumption of risk as an affirmative defense. *Howell v. Clyde,* 533 Pa. at 163, 620 A.2d at 1113.[7] The court stated in *Howell,* "to the extent

---

6. The Pennsylvania Superior Court has stated that the *Howell* opinion seems to "espouse the approach most narrow in scope that can gain at least a concurrence of the majority of the court." *Hardy v. Southland Corp.,* 435 Pa. Super. 237, 245, 645 A.2d 839, 842 (1994), *appeal denied,* 539 Pa. 679, 652 A.2d 1324 (1994).

7. In footnote 10 of the opinion, the court noted that assumption of risk remains a viable affirmative defense in cases involving express

that an assumption of risk analysis is appropriate in any given case, it shall be applied by the court as a part of the duty analysis, and not as part of the case to be determined by the jury." *Howell v. Clyde,* 533 Pa. at 162, 620 A.2d at 1112-13. Therefore, in a negligence action, assumption of risk is a question of law that is incorporated into the court's analysis of whether or not the defendant owed a duty to the plaintiff. See *Staub v. Toy Factory, supra,* 749 A.2d at 526.

Unlike *Howell* in which the court addressed a motion for compulsory nonsuit, the case before this court involves defendant's motion for summary judgment. The Superior Court has provided some guidance with regard to assumption of risk in these two types of pleadings. In *Staub v. Toy Factory Inc.,* 749 A.2d at 527 n.8, the court stated: "[f]or summary judgment purposes, affirmative defenses are generally decided under Pa.R.C.P. 1035.2(1), where it is the moving party's burden to establish the defense as a matter of law. Under *Howell* and *Hardy,* however, assumption of risk is now considered part of a 'no-duty' analysis. As such, the doctrine now falls under the second type of summary judgment motion, described in Pa.R.C.P. 1035.2(2). Under Rule 1035.2(2), a party may obtain summary judgment by pointing to the *adverse party's lack of evidence* on an essential element of the claim. . . . One of the essential elements of a negligence claim is that the defendant owes the plaintiff a duty of care. Under Rule 1035.2(2), the defendant's method for pointing to a lack of evidence on the duty

assumption of risk, or cases brought pursuant to 402A (strict liability theory), or cases in which assumption of risk is specifically preserved by statute.

issue is to show that the plaintiff assumed the risk as a matter of law. This process will entail gathering and presenting evidence on the plaintiff's behavior, and attempting to convince the court that the plaintiff knew the risk and proceeded to encounter it in a manner showing a willingness to accept the risk. Thus, for all practical purposes, the process for showing 'no-duty' assumption of the risk under Rule 1035.2(2) is indistinguishable from showing assumption of the risk as an affirmative defense under Rule 1035.2(1)." (emphasis in original)

Pennsylvania courts have not addressed the doctrine of assumption of risk in the context of a tubing accident specifically; however, assumption of risk has been applied in situations involving injuries sustained during other sporting events. Our Supreme Court has stated, "[w]hatever complexities and difficulties have attended the assumption of the risk doctrine in other areas, cases involving injuries to plaintiffs who were spectators or participants at sporting events or amusement facilities have tended to speak in terms of whether the injury suffered resulted from a risk 'inherent' in the activity in question; if it did, then the defendant was under no duty to the plaintiff, and the suit could not go forward." *Hughes v. Seven Springs Farm Inc., t/d/b/a Seven Springs Mountain Resort,* 563 Pa. 501, 762 A.2d 339, 343 (2000).

In *Pagesh v. Ucman,* 403 Pa. Super. 549, 589 A.2d 747 (1991), a water-skier brought a personal injury action against the operator of a boat after the skier injured his leg. Plaintiff alleged that his injury occurred as a result of defendant's operating the boat in circles in order to make waves for the skier to be pulled through. Defendant raised the defense of assumption of risk. Plaintiff

argued that he could not have assumed the risk of an activity that he did not know was going to occur (that the defendant would operate the boat in circles in order to make waves). The court held that the plaintiff's injury resulted from an ordinary risk associated with water-skiing. The court also held that the plaintiff was an experienced water-skier who knew the dangers inherent in the activity. The court determined that the plaintiff voluntarily chose to ski and willingly accepted the risk. Specifically, the court stated that the plaintiff could have avoided any aspect of the alleged danger by signaling the defendant to slow down, stop or change course. The court suggested that the plaintiff also could have dropped the rope being used to pull him. Instead, plaintiff failed to use the means available to avoid any danger, and therefore assumed the risk of injury. *Id.* The court also upheld the trial court's comparison of the plaintiff's injury to those sustained during participation in other sports.

Water-skiing is much like tubing in that the skier volunteers to be pulled behind a boat while holding a rope which is attached to the back of the boat. As the Superior Court noted, it is not uncommon for the operator of the boat to drive in circles in order to make waves which the skier is pulled through. The same can be said of tubing. The waves present a challenge for the skier, making it more difficult for him to maintain his balance. In the case of a tuber, the waves add to the thrill sought by the participant. The court held that the risk of injury to the skier while being pulled through the waves is an ordinary risk associated with water-skiing. *Pagesh v. Ucman,* 403 Pa. Super. at 556, 589 A.2d at 750. California courts have heard cases involving tubing injuries, and have described tubing as "a variation of water-skiing designed

to accommodate those eager to experience the force of whipping around wakes but lacking the ability to water-ski." *Record v. Reason,* 73 Cal. App. 4th 472, 482, 86 Cal. Rptr. 2d 547, 554 (1999). This appears to be a fair assessment of the sport of tubing especially in light of *Pagesh v. Ucman.*

The plaintiff in *Pagesh* raised many of the same arguments that plaintiff makes in this case. For example, both plaintiffs allege that they could not have assumed the risk of a portion of the activity they did not know was going to occur. In this case, plaintiff argues that he could not have known that defendant would be intoxicated and would operate the boat at an excessive speed; however, plaintiff has not provided sufficient evidence to support either of these allegations. Therefore, we must simply assess the risk of falling off a tube as the boat turns a corner, and plaintiff's conduct in view of that risk.

Plaintiff was an experienced tuber. He described himself in his deposition testimony as "water oriented." He stated that he has had 18 years of sailing experience. He further stated that he has been on many power boats, and has operated power boats that belonged to his friends. Plaintiff also stated that he has operated jet skis in the past and that he has been water-skiing approximately a dozen times since 1993. Plaintiff indicated that he also began tubing in approximately 1993. Plaintiff acknowledged that he was aware of the standard hand signals used in tubing, although he did not use them on the day the incident occurred. Plaintiff further acknowledged that he has been tubing approximately 12 times, and that he has probably fallen off the tube on each of those occasions. He agreed that falling off the tube is part of the

tubing experience and stated that one is aware of the possibility of falling off during any tube ride. Plaintiff also stated that he has fallen off both single and double tubes, and that he recognizes the possibility of body to body contact between the two riders when riding or falling off a double tube.

Plaintiff's deposition also demonstrated that he was familiar with tubing terminology. For example, he used the term "whipped," and testified that it refers to the movement of the tube behind the boat as the boat turns a corner. Plaintiff stated that the tube typically whips to the side at twice the speed of the boat and then realigns directly behind the boat after the boat has completed the turn. Plaintiff explained that the tube whips to the right if the boat turns to the left. Therefore, it appears that the risk of falling off the tube and being injured when the boat makes a turn is an ordinary risk associated with tubing and one known by plaintiff. If plaintiff had provided adequate proof that defendant was operating the boat at an excessive speed, the question would then have become whether or not such conduct on the part of the defendant increased the risks above those inherent in the sport.

As defendant argues, plaintiff has provided no evidence to demonstrate that defendant's alleged conduct was outside the normal boundaries of the sport. Plaintiff alleges that defendant was intoxicated while operating the boat. For the reasons set forth above, this court will not address those allegations. Plaintiff also alleges that defendant was operating the boat at an excessive rate of speed. Again, as noted above, plaintiff has not provided sufficient evidence to support this allegation. Plaintiff can-

not avoid summary judgment by alleging that he "believed" the speed of the boat was too fast or that the angle of the turn was too sharp. However, even if plaintiff had provided sufficient evidence to support those allegations, such conduct would not necessarily increase the risks above those inherent in the sport.

California courts have held that minor accelerations by the driver of the boat cannot form the basis for liability to the tube rider. *Bjork v. Mason,* 77 Cal. App. 4th 544, 552 (2000). That court reasoned that imposition of legal liability on the driver of a boat for ordinary negligence in making too sharp a turn or in pulling a skier too rapidly would have "an undesirable chilling effect on the driver's conduct" and might have a "generally deleterious effect on the nature of the sport of water-skiing as a whole." *Ford v. Gouin,* 3 Cal. 4th 339, 345 (1992). The same reasoning is applicable to tubing.

As the Superior Court suggested in *Pagesh,* if plaintiff felt that he was in danger, he could have signaled defendant to slow down, stop or change course. Plaintiff testified that he was aware of the hand signals commonly used in tubing. Plaintiff suggests that he could not let go of the tube in order to give a hand signal because the boat was traveling at an excessive rate of speed. For the reasons set forth above, plaintiff has not provided sufficient evidence to support the allegation that defendant was operating the boat at excessive speeds. This court therefore finds that plaintiff failed to use the means available to avoid the risk of falling off the tube. Furthermore, the risk of falling off the tube while being "whipped" into a corner is a risk inherent in the sport. Plaintiff was aware of this risk but nevertheless he vol-

untarily chose to go tubing. He therefore willingly accepted the risk and cannot recover for the injuries he sustained as a result of that decision.

Accordingly, the attached order is entered.

### ORDER

And now May 29, 2002, in consideration of defendant's motion for summary judgment and in accordance with the attached opinion, said motion is granted.

This case is dismissed. Costs to be paid by plaintiff.