493 A.2d 97

**Saundra CARR**

v.

**ERIE INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued March 25, 1985.

Filed May 17, 1985.

430

David M. McCormick, Philadelphia, for appellant.

James D. Rosen, Philadelphia, for appellee.

Before BECK, POPOVICH and TROMMER *, JJ.

BECK, Judge:

The issue in this appeal is whether an insured who elected to make her basic loss benefits under the No-Fault Motor Vehicle Insurance Act[1] excess insurance to the primary medical insurance provided by her health maintenance organization ("HMO") may recover the full amount of medical expenses from her no-fault (excess) carrier when she voluntarily chose to obtain medical treatment from non-HMO physicians. We hold that such an insured may not recover the full amount of her expenses from her no-fault (excess) carrier and accordingly reverse the order of the trial court.

In 1979, appellee Saundra Carr applied for no-fault coverage for her 1979 Chevette. Section 203(b) of the No-Fault Act, 40 P.S. § 1009.203(b), provides that an insured who possesses other medical insurance may elect to make that

---

* Judge Evelyn Trommer, Senior Judge of the Court of Common Pleas of Philadelphia County is sitting by designation.

1. No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 et seq., *repealed,* Act of February 12, 1984, P.L. 26, No. 1984–11, *as amended by* Act of February 12, 1984, P.L. 53, No. 1984–12.

collateral coverage the primary source of basic loss benefits. Section 203(b) continues:

"In all such instances each contract of insurance issued by an insurer shall be construed to contain a provision that all basic loss benefits provided therein shall be in excess of any valid and collectible benefits otherwise provided through such program, group, contract or other arrangement as designated at the election of the owner or operator which shall be primary."

Section 203(c), 40 P.S. § 1009.203(c), then provides that such excess coverage shall be offered at a discount reflecting the diminished risk accepted by the no-fault carrier. Because appellee possessed other medical insurance, she made this election in her application and received a 40% reduction in premium for basic loss coverage.

Appellee was injured in an automobile accident on February 7, 1983. At that time her primary medical insurance was an HMO membership paid for by her employer, Rolling Hill Hospital. Before the accident appellee had received general medical and gynecological treatment from her HMO primary physician ·and an HMO-approved specialist. However, she chose not to visit her HMO primary physician for treatment for the injuries she sustained in the accident. Neither did she seek a referral to an HMO-approved specialist. Instead, she received treatment from a non-HMO physician who had been recommended to her by a friend. HMO denied payment for these medical services, and appellee sought reimbursement from her no-fault carrier, appellant Erie Insurance (hereinafter "appellant" or "Erie"). Appellant denied the claim on the ground that Erie, as the excess insurer, was not liable for medical treatment which appellee could have obtained through HMO-approved physicians. Appellee then filed suit against Erie to compel payment of no-fault benefits. Cross-motions for summary judgment were filed. The trial court granted appellee's motion, holding that she was entitled to the benefits less a $250 deductible under 31 Pa.Code § 66.53. The trial court also awarded

attorney's fees and costs to appellee. The instant appeal by Erie followed.

■ The trial court held, and appellee argued before us, that because HMO denied payment to appellee, there are no "valid and collectible benefits otherwise provided" within the meaning of section 203(b) of the No-Fault Act. We disagree. The drafters of § 203(b) did not intend that an insured could render otherwise available collateral benefits "uncollectible" by her own action and thereby make the excess insurer liable for the full amount of the loss. Such a reading of the section would effectively destroy the distinction between policies with and without the collateral source election and allow appellee to collect benefits from Erie for which she did not contract.

■ Appellee argues based on the dictionary meaning of the word that no benefits were "collectible" from the primary insurer, HMO, *once appellee chose to seek treatment from non-HMO physicians.* While appellee is technically correct that at that point no primary benefits could be "collected," her argument misses the mark. We believe the proper focus of inquiry is on what benefits were available to appellee at the time of the accident, before she took unilateral action to seek non-HMO medical treatment. Medical benefits were available, i.e. able to be collected, i.e. "collectible," from HMO but appellee for her own reasons chose not to "collect" them. Appellee concedes that she made the § 203(b) election and received an appropriate premium reduction, that she was a member of HMO on the date of the accident and entitled to HMO coverage, and that she voluntarily sought treatment from a non-HMO physician (Appellee's Brief at 1). Appellee correctly equates "provide" with "supply" (*Id.* at 8). The record shows without doubt that HMO supplied medical benefits in the sense that it stood ready and willing to furnish appropriate medical care to appellee, who nevertheless chose to reject its services.

Three months before the trial court rendered its order in the instant case, another judge of the Court of Common Pleas of Philadelphia County rejected an argument identical to that advanced by appellee. In *Barksdale v. State Farm Mutual Automobile Ins. Co.*, 10 Phila.County Reporter 224 (1984) (per Klein, J.), the plaintiff had likewise designated an HMO as his primary basic loss benefits carrier, was treated by non-HMO doctors by his choice and sought payment from his no-fault (excess) carrier. The court found the plaintiff's argument that primary benefits were not "collectible" from his HMO to be meritless, explaining that "[b]enefits were, in fact, collectible from PHP but, because of his failure to fulfill the terms of the contract, Barksdale was not eligible to receive those benfits." 10 Phila.County Reporter at ——. Judge Klein reasoned that allowing recovery from the excess insurer was contrary to the goals of § 203(b), which are to encourage coordination of insurance coverages by providing an incentive for motorists to purchase and use collateral medical coverage, thereby reducing the risks assumed by no-fault insurers. This risk reduction was believed to lead to lower premiums for all no-fault purchasers. *Id.* at ——; *see also Singer v. Sheppard*, 33 Pa.Commw. 276, 286–88, 381 A.2d 1007, 1012 (1978).

■ We agree with the reasoning of the *Barksdale* court.[2] Although appellee and the trial court cite us to

2. Our construction of section 203(b) was also foreshadowed by implication in *Johnson v. State Farm Mutual Automobile Insurance Co.*, 339 Pa.Super. 112, 488 A.2d 335 (1985). In *Johnson,* plaintiff was covered by a Blue Cross/Blue Shield medical insurance plan, and received reimbursement for his medical expenses arising from an auto accident from Blue Cross/Blue Shield. He then sought to recover the same expenses from State Farm, claiming under a policy which *did not* include the § 203(b) election. We held that plaintiff was entitled to recovery from State Farm, because a collateral health insurer was not an "obligor" within the meaning of 40 P.S. § 1009.204(b), limiting the insured's recovery to his net loss and apportioning liability where there are multiple "obligors" of basic loss benefits. In support of this holding, we cited § 203(b) as indicating that the legislature intended to distinguish collateral health insurers from multiple no-fault insurers and to provide in section 203 for a means of coordinating benefits

statements of policy in the No-Fault Act indicating one of its goals was to ensure prompt and full recovery of benefits to accident victims, another stated aim of the Act was to provide for adequate insurance at a reasonable cost. *See* 40 P.S. § 1009.102. Section 203(b) implements this policy by offering motorists an opportunity to avoid paying twice for the same coverage. Because the reduction in premium thus enjoyed by the insured is based on a reduction in the risk assumed by the no-fault insurer, such a contract of insurance clearly contemplates that the insured has a duty to take advantage of available benefits from the collateral source before turning to the excess insurer. Appellee had the means of securing a prompt and full recovery of benefits at her disposal but did not avail herself of them.

We note that similar excess insurance clauses were construed in this fashion prior to the enactment of the No-Fault Act. In *Burns v. Employers' Liability Assurance Corp.*, 205 Pa.Super. 389, 209 A.2d 27 (1965), the medical benefits portion of plaintiff's automobile insurance policy provided, inter alia, that "the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance." We held that the purpose and effect of this clause

> was to limit appellee's obligations, in the event of an accident in a non-owned automobile, to payments in excess of the car-owner's automobile medical payments insurance. Thus, if the car-owner had such insurance, *the appellant would be bound initially to seek medical expense payments to the limit of that policy.*

205 Pa.Super. at 395, 209 A.2d at 31 (emphasis added).

The trial court also held that Erie was obligated to pay basic loss benefits to appellee by virtue of 31 Pa.Code § 66.53. This regulation provides in pertinent part:

> Insurers may also require the named insured to give reasonable notice of termination of such coverage to

with collateral health insurers. That means, of course, is the election under § 203(b).

permit proper rating of coverage under this section. If no named insured has such coverage in effect at the time an accident occurs and the named insured has not previously notified the insurer, a $250.00 deductible for professional medical treatment and care or a two week waiting period for work loss, or both, as appropriate, shall apply, but only against the named insured.

 The trial court held in effect that this regulation applied in all circumstances where the insured received no benefits from a primary insurer, whatever the reason. We agree with appellant that the trial court's construction is untenable in light of the plain language of the regulation and the requirement that it be consistent with the statute which it implements, § 203 of the No-Fault Act. The regulation clearly applies only where the insured has no collateral medical coverage at the time of the accident, not where the insured has such coverage but chooses not to accept benefits. We agree with appellant that § 66.53 is intended to address the real possibility that an insured could lose his primary medical coverage for a reason not his fault. The collateral medical insurance envisioned in § 203(b) typically takes the form of a benefit provided by the insured's employer. *See* D. Shrager, *The Pennsylvania No-Fault Motor Vehicle Insurance Act,* § 1:18 (1979). The above regulation protects the insured who loses this primary coverage because he is laid off or because his employer reduces fringe benefits as a cost-cutting measure.

The same claim regarding 31 Pa.Code § 66.53 was also rejected in *Barksdale.* Judge Klein held:

By its terms, Section 66.53 is applicable only if and when a collateral contract is not in effect at the time a loss occurs. In this case, coverage with PHP was in effect at the time the loss occurred but, because of Plaintiff's own actions, he was ineligible to receive those benefits.

10 Phila. County Reporter at ——.

 Lastly, appellee argues that reversing the trial court will infringe appellee's First Amendment freedom of

association by restricting her right to be treated by the doctors of her choice. This argument is utterly devoid of merit. The issue here is not what medical treatment appellee may receive but whether Erie is contractually or legally obligated to reimburse appellee for the particular medical expenses she incurred. The limitations appellee has encountered on her ability to be reimbursed for her medical expenses are self-imposed through her voluntary decision to seek treatment in a way not complying with the conditions of her primary or excess insurance coverages.[3]

For all the foregoing reasons, the trial court erred in awarding summary judgment to appellee. The court also erred in awarding attorney's fees and costs to appellee. The court failed to make a finding under section 107(3) of the No-Fault Act, 40 P.S. § 1009.107(3) that Erie denied appellee's claim without reasonable foundation, and such a finding would be unwarranted in light of our holding that Erie's position was well founded on the plain meaning and intent of the statutory language. Since there are no genuine issues of material fact for trial, we hold that appellant Erie is entitled to summary judgment.

The order granting appellee Saundra Carr's motion for summary judgment and denying appellant Erie Insurance Co.'s motion for summary judgment is reversed, and summary judgment is hereby entered in favor of appellant Erie Insurance Co. Jurisdiction is relinquished.

**3.** It appears that appellee understood that by subscribing to her HMO, she was required to obtain treatment from physicians affiliated with or approved by her HMO in order to receive reimbursement from HMO. Significantly, she does not argue that HMO was unable to provide adequate medical treatment for the injuries she suffered in the accident. Obviously, if appellee's HMO or other collateral medical insurance does not provide adequate medical services for appellee's injuries, she could recover those expenses from her no-fault carrier because they would not be "collectible" from the primary insurer.