594 A.2d 750

**Paula SINCLAIR, a Minor, by her Parents and Natural Guardians, Joan A. SINCLAIR and Mark Sinclair, Individually and in Their own Right, Appellants,**

v.

**Robert Alan BLOCK, M.D., and Philadelphia OB–GYN Group, Ltd., Health Services Plan of Pennsylvania.**

Superior Court of Pennsylvania.

Argued April 2, 1991.

Decided July 3, 1991.

Petition for Allowance of Appeal Granted Dec. 11, 1991.

542

Lawrence D. Finney, Philadelphia, for appellants.

Joseph H. Foster, Philadelphia, for Robert A. Block, appellee.

Nancy L. Siegel, Philadelphia, for Phl. OB–GYN Group, appellee.

Before WIEAND, OLSZEWSKI and BROSKY, JJ.

BROSKY, Judge.

These appeals are from an order of the trial court which denied appellants' post-trial motions and directed the prothonotary to enter judgment in favor of Dr. Block, and from the entry of judgment in favor of Philadelphia OB–GYN Group, Ltd. (POGGL).[1] Appellants present the following issues for review:[2] (1) whether the trial court erred in

---

1. POGGL was a Pennsylvania corporation which consisted of Dr. Block and two other physicians with whom he practiced obstetric and gynecological medicine. *See* N.T. 3/2/90, at 7.

2. Appellants have violated Pa.R.A.P., Rule 2116(a), 42 Pa.C.S.A., which provides that "[t]he statement of the questions involved must state the question or questions in the briefest and most general terms.... It should not ordinarily exceed 15 lines, [and] must *never* exceed one page.... This rule is to be considered in the highest degree mandatory, admitting of no exception...." In reviewing the Statement of Questions contained in appellants' brief, we observe that it spans three

refusing to grant appellants' motion to amend their post-trial motions to include additional grounds for relief which related to the trial court's jury charge; (2) whether the trial court erred in concluding that appellants waived their right to assert additional grounds in their post-trial motions; (3) whether the trial court erred in charging the jury as to appellee's reporting requirements under federal law; (4) whether the trial court erred in charging the jury as to the "two schools of thought" doctrine; (5) whether the trial court erred in concluding that a forceps delivery is not a surgical or operative procedure to which the "informed consent" doctrine applies, and if so, whether the trial court erred in refusing to remove the nonsuit entered in favor of Dr. Block on this issue; (6) whether the trial court erred in refusing to charge the jury on the issue of informed consent; (7) whether the trial court erred in precluding appellants from answering certain questions relating to Dr. Block's lack of explanation as to the risks associated with a forceps delivery; and (8) whether the trial court erred in refusing to remove the nonsuit entered in favor of POGGL.[3] For the reasons set forth below, we affirm the judgment and order entered in favor of appellees.

Before addressing the merits of this appeal, it is necessary to briefly recount the relevant facts of this case. Mrs. Joan Sinclair was pregnant with her first child. On October 21, 1982, her labor commenced, and she eventually arrived at the hospital where her obstetrician, Dr. Block, ruptured her amniotic sac and proceeded to monitor the progress of the labor. Although Mrs. Sinclair's cervix ultimately reached full dilation, Dr. Block noted that after several

pages and raises nine issues. Because these defects do not substantially hamper our ability to provide effective and meaningful review, we will not dismiss the appeal. However, "[w]e remind [appellants] that the rules [of procedure] are mandatory, not directory, and that in appropriate cases, we will not hesitate to impose sanctions, including the draconian remedy of dismissing the appeal[,]" whenever a party fails to comply with the rules. *Pleet v. Valley Greene Associates,* 371 Pa.Super. 530, 531–532 n. 1, 538 A.2d 567, 568 n. 1 (1988).

**3.** We have restated the issues raised by appellant for ease of discussion.

hours the baby stopped moving through the birth canal.[4] In addition, there was some indication that the baby's heart rate had slowed. At this point, Dr. Block observed that the baby was turned to the side and was not proceeding through the birth canal in the usual position.[5] Because of the baby's position, failure to progress and slow heart rate, Dr. Block attempted to deliver the child by using forceps.[6] The attempted forceps delivery was unsuccessful and Paula was subsequently delivered via caesarean section. After her birth, Paula was observed to have areas of swelling on her scalp, as well as a faint mark on her face and forehead, which was thought to be a mark from the forceps.[7] Subsequent examination and testing revealed that Paula had sustained seizures and a fractured skull.

As a result of these injuries, appellants, Paula and her parents, timely commenced suit against appellees, Dr. Block and his employer, POGGL.[8] A jury trial was conducted in March, 1990. During trial, a nonsuit was granted as to POGGL and as to Dr. Block on the issue of informed consent. The jury returned a verdict in favor of Dr. Block on the issue of negligence. Appellants filed post-trial motions. It was not until almost five months later, on the day of oral argument, that appellants requested leave to specify additional grounds in support of their request for post-trial

4. This phenomenon was described as an "arrest of descent." *See* N.T. 3/1/90, at 80–81.

5. Mrs. Sinclair's child, Paula, was situated with the back of her head turned towards the mother's right side. *See* N.T. 3/1/90, at 74. Dr. Block indicated that it was not possible to deliver the baby with its head in this position. *See* N.T. 3/8/90, at 50.

6. Essentially, the forceps would be used to rotate or turn the baby to the correct position, that is, with the back of the baby's head turned towards the mother's abdomen. *See* N.T. 3/6/90, at 27.

7. The mark was very faint and disappeared after a few days. No other forceps marks were noticed on Paula's head.

8. Health Services Plan of Pennsylvania (HSPOP), a Pennsylvania Corporation which provided health care services to appellants, was also identified as an original defendant in the complaint. *See* Complaint, at paragraph 4. By agreement of the parties, suit as to this defendant was discontinued on September 16, 1988. Thus, HSPOP is no longer a party to this action and is not involved in this appeal.

relief.   Appellees objected to the untimely amendment. The trial court declined to grant appellants' motion to amend and subsequently denied the post-trial motions.   As a result, judgment was entered in favor of Dr. Block. Appellants timely filed an appeal from this judgment, docketed at No. 2540.   With regard to POGGL, appellants' requested the prothonotary to enter judgment in accordance with the nonsuit that was entered at trial.   An appeal from this judgment was docketed at No. 2541.   These appeals were then consolidated for appellate review.

Appellants first contend that the trial court erred in refusing to grant their motion to amend their post-trial motions to include additional allegations of trial error.[9]   In conjunction with this issue, appellants further claim that the trial court erred in determining that these additional errors were waived by appellants.   With regard to the filing of original and supplemental post-trial motions, the procedural rules provide that:

> (b) Post-trial relief may not be granted unless the grounds therefor, ... (2) are specified in the motion.... Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.
> (c) Post-trial motions shall be filed within ten days after[:] (1) verdict....

Pa.R.C.P., Rules 227.1(b)(2) and (c)(1), 42 Pa.C.S.A.   However, where a party files supplemental post-trial motions and no objection is raised by an opposing party, and where the trial court elects to ignore the untimeliness and address the merits of the issues, this court has indicated that the grounds raised in the supplemental post-trial motions are not waived, but have been properly preserved for appellate review.   *See Millard v. Nagle,* 402 Pa.Super. 376, 380, 587 A.2d 10, 11–12 (1991) *(en banc ), citing Kurtas v. Kurtas,* 521 Pa. 105, 109, 555 A.2d 804, 806 (1989).   In cases where the opposing party objects to the untimely filing and asserts that he or she is prejudiced thereby, the trial court must

---

**9.** Appellants essentially sought leave to file supplemental post-trial motions.

then determine whether to grant or deny leave to file the supplemental post-motions and explain its rationale therefor. *See Millard v. Nagle, supra,* 402 Pa.Super. at 380, 587 A.2d at 12. The decision of the trial court may then be reviewed by this court under an abuse of discretion standard. *Id.*

In applying these principles to the facts of this case, we observe that the trial court did not grant appellants' motion to amend and did not give appellants leave to file their supplemental post-trial motions. The trial court did not provide any explanation for its decision, and merely concluded that these additional claims were waived because of appellants' failure to raise these matters in their original post-trial motions. *See* Trial Court Opinion, dated August 13, 1990, at 2–3. After reviewing the record, we discern no abuse of discretion committed by the trial court.

The record reveals that appellants did not seek leave to file their supplemental post-trial motions until July 27, 1990, almost five months after the date of the trial. Appellants did not offer any explanation or reason for their inability to raise the additional grounds in the original post-trial motion. Instead, appellants asserted that they expressly reserved the right to file additional post-trial motions after reading the transcript. *See* Appellants' Brief, at 18. We neither approve nor condone this method of preserving claims for post-trial and appellate review, and we have repeatedly rejected the idea that a party can unilaterally extend the time in which to file post-trial motions by including such a statement in the originally filed post-trial motions. *See, e.g., Commonwealth v. Kelly,* 365 Pa.Super. 28, 36, 528 A.2d 1346, 1350 (1987), *allocatur denied,* 517 Pa. 598, 535 A.2d 1057 (1987) and *Millard v. Nagle, supra,* 402 Pa.Super. at 400, 587 A.2d at 22 (dissenting opinion by Tamilia, J.). Moreover, this court has recognized that where the additional grounds do not require a review of the transcript, they must be raised within the period prescribed by the rules in order to be preserved for review. *See Kelly,* 365 Pa.Super. at 36–37, 528 A.2d at 1350.

The matters which appellants sought to raise pertained to an allegedly erroneous jury instruction. Appellants specifically objected to the portion of the jury instruction relating to the federal reporting requirements following the lower court's charge. *See* N.T. 3/9/90, at 115. Therefore, appellants were clearly aware of any alleged error and did not need to review the trial transcript in order to raise this issue in their original post-trial motions. Because the record reveals that appellants failed to offer any reason for their delay in asserting the additional grounds, and because appellants clearly failed to comply with the time requirements set forth in Rule 227.1(c), we are unable to conclude that the trial court abused its discretion by denying appellants' leave to file supplemental post-trial motions in this case.[10] We similarly find no error in the trial court's conclusion that the matters contained in the supplemental post-trial motions were waived.

Having disposed of appellants' initial claims, we need not address the question of whether the trial court erred in instructing the jury as to Dr. Block's reporting requirements under federal law. However, even if we were to address the merits of this issue, we find that appellants would not be entitled to relief on this basis. This court recently reviewed a similar jury instruction in *Levine v. Rosen*, 394 Pa.Super. 178, 575 A.2d 579 (1990), *allocatur granted*, 526 Pa. 636, 584 A.2d 319 (1991). In *Levine*, the trial court gave the standard irrelevant considerations charge and then dismissed the jury.[11] After defense counsel objected to this portion of the charge, the trial court recalled the jury and gave them an additional charge on the

10. We observe that the trial court could properly have exercised its discretion and considered the additional claims raised by appellants, despite the fact that these claims were untimely. *See* Pa.R.C.P., Rule 126, 42 Pa.C.S.A. (which permits a trial court to disregard the rules in the interest of justice). However, this rule does not mandate or require a trial court to consider untimely supplemental post-trial motions, especially where the party asserting the grounds has offered insufficient or no reason for the delay.

11. We note that Judge Diaz, the lower court judge who presided in *Levine*, was the same judge who heard the case *sub judice*.

physician's reporting requirements under federal law. On appeal, this court concluded that although the lower court's corrected charge was an accurate statement of federal law, it undermined the irrelevant considerations instruction which had previously been given. *Id.*, 394 Pa.Super. at 183, 575 A.2d at 581. We further observed that the federal reporting requirements were irrelevant to the merits of the medical malpractice action, as the requirements do not relate to the issue of the physician's negligence. *Id.* Because this additional instruction may have contributed to the verdict, we reversed the judgment and remanded for a new trial. *Id.*

> In this case, the trial court instructed the jury as follows: A medical malpractice case is a civil action for damages, and nothing more. The sole issue is whether the plaintiff has suffered injuries as a result of the defendant's negligence, and is thus entitled to monetary compensation for those injuries. The case does not involve punishment of the defendant or even criticism of his professional abilities beyond the fact of this matter. The claim—the only requirement is that he has an obligation, under the federal law, to report to a licensing board the results of this case and the circumstances relating to it. The claim does not involve the defendant's reputation, his medical practice or his rights as a licensed physician. Therefore, no thought should be given to these irrelevant considerations in reaching a verdict in this case.

N.T., 3/9/90, at 109.

As we recognized in *Levine*, the discussion of a physician's duty to report the results and circumstances of the case is irrelevant to the issue of whether the physician was negligent. *See Levine, supra.* However, appellants would only be entitled to a new trial if the instructions might have contributed to the verdict. *See Levine, supra, citing Jones v. Montefiore Hospital,* 494 Pa. 410, 419, 431 A.2d 920, 925 (1981). Unlike the situation presented in *Levine*, the trial court in this case did not call the jury back to instruct it on the physician's duty to report the circumstances of the case

under federal law. Instead, the trial court mentioned this requirement in the context of its discussion relating to irrelevant matters and specifically instructed the jury that it should not give any thought to these factors. Because the jury was instructed to disregard these irrelevant concerns, including Dr. Block's duty to report the outcome of this case, the trial court's instruction could not have contributed to the verdict.

■ Moreover, under the Health Care Quality Improvement Act of 1986, 42 U.S.C.A. §§ 11101, 11131 and 11134, a physician is only required to report a payment made in settlement or satisfaction of a medical malpractice claim. The trial court in this case did not instruct the jury that Dr. Block would only have to report the result if he actually made payment to appellants in satisfaction of their claim, but informed the jury that Dr. Block would be required "to report the results of this case and the circumstances relating to it." *See* N.T. 3/9/90, at 109. Thus, even if the jury considered this instruction, it could not have influenced the jury's verdict because the instruction indicated that Dr. Block would be required to report the outcome of the case to the federal licensing board, regardless of whether the jury's verdict was entered in favor of Dr. Block or the Sinclairs.

■ In their fourth issue, appellants assert that the trial court erred in giving the "two schools of thought" charge to the jury, and claim that such a charge was inappropriate because there was no evidence that the experts disagreed on the application or use of forceps to deliver the baby.[12] In general, "[t]he "two schools of thought" doctrine provides that a doctor will not be liable for medical malpractice if he follows a course of treatment supported by reputable, respected and reasonable medical experts." *Levine,* 394

---

12. Appellants' argument on appeal is contradicted by the record in which they explained their various theories of negligence to the trial court. Primarily, appellants' believed that: (1) Dr. Block should not have applied forceps, but should have performed a caesarean delivery; and (2) that he negligently applied the forceps. *See* N.T. 3/8/90, at 214–215 and N.T. 3/9/90, at 10–12.

Pa.Super. at 183, 575 A.2d at 581. The doctrine is therefore only applicable "in medical malpractice cases where there is more than one method of accepted treatment for the patient's disease or injury." *Furey v. Thomas Jefferson University Hospital*, 325 Pa.Super. 212, 224, 472 A.2d 1083, 1089 (1984). However, a jury instruction on this doctrine has been found inappropriate or inapplicable where the experts agree on the method of treatment for a particular disease or condition, but disagree on whether the symptoms exhibited by the patient were consistent with such a condition and whether the physician was negligent in failing to diagnose the condition. *See Levine*, 394 Pa.Super. at 183–184, 575 A.2d at 581–582, *citing Morganstein v. House*, 377 Pa.Super. 512, 517–519, 547 A.2d 1180, 1182–1183 (1988), *appeal dismissed*, 525 Pa. 498, 581 A.2d 1377 (1990), (which held that the two schools of thought doctrine was inapplicable where the medical experts agreed on the treatment of unstable angina, but disagreed as to whether the patient's symptoms and EKG disclosed the illness and should have been diagnosed) and *D'Angelis v. Zakuto*, 383 Pa.Super. 65, 69–71, 556 A.2d 431, 433–434 (1989) (which held that the two schools of thought instruction was inapplicable where the experts did not disagree on the proper treatment for pneumonia, but disagreed as to whether the patient's condition should have been diagnosed in view of the symptoms exhibited by the patient).

In this case, appellants believed that Dr. Block was negligent for attempting to deliver the baby by the use of forceps; thus, it was their position that he should have proceeded to directly perform a caesarean section. *See* N.T. 3/1/90, at 119; 3/8/90, at 214–216; and 3/9/90, at 10–12. In support of this theory, appellants' expert, Dr. Pinshaw, admitted that while the use of forceps was appropriate in some cases, they should not have been used to deliver the baby in this case. *See* N.T. 3/1/90, at 89–90 and 95–97. Contrary to this testimony, appellees presented the testimony of Dr. Schneider, who testified that it was reasonable to first attempt a forceps delivery before proceeding to per-

form a delivery by caesarean section because of the relatively minor risks associated with a forceps delivery, as compared to the more serious risks associated with a caesarean delivery. *See* N.T. 3/6/90, at 20–21 and 23–25. In fact, Dr. Schneider indicated that caesarean sections should be avoided unless they were absolutely necessary. *See id.*, at 25. This preference for avoiding caesarean sections was further discussed by Dr. Block, who indicated that while increasing numbers of caesarean deliveries were performed at the time of Paula's delivery, this trend had reversed itself in that more physicians are returning to the use of forceps and are avoiding caesarean deliveries. *See* N.T. 3/8/90, at 41–42.

As established by this testimony, it is clear that the experts did not disagree as to the diagnosis of Mrs. Sinclair's condition since all of the physicians believed that it was necessary to deliver the baby. *See* N.T. 3/1/90, at 86 and 122–123; and 3/6/90, at 22–23. Instead, they disagreed as to the manner or type of treatment which should have been administered to Mrs. Sinclair to assist her with the delivery of her child. Under these circumstances, the "two schools of thought" instruction was required and we find that the trial court did not err in giving this instruction to the jury.

Appellants next challenge the trial court's determination that a delivery by forceps is not a surgical procedure which requires application of the informed consent doctrine. The parties do not dispute the fact that Mrs. Sinclair was never advised of the risks associated with a forceps delivery while she was in labor. *See* N.T. 3/7/90, at 103. Similarly, there is no disagreement that Mrs. Sinclair never specifically consented to the forceps delivery. However, Mrs. Sinclair admitted that she signed a general consent form which authorized Dr. Block to perform any procedure which was necessary to treat any problem or condition that might have occurred during her labor. *See* N.T. 3/7/90, at 114–115 and 119–123. While it is undisputed that she consented to have her child delivered by Dr. Block, the question remains as to

whether the use of forceps would fall within the scope of this general consent or whether it is a separate surgical or operative procedure which requires the physician to obtain additional consent.

In concluding that a forceps delivery is not a surgical procedure which requires the physician to obtain the patient's consent, the trial court cited *Bulman v. Myers*, 321 Pa.Super. 261, 467 A.2d 1353 (1983) and *Sauro v. Shea*, 257 Pa.Super. 87, 390 A.2d 259 (1978). These decisions offer scant assistance as both cases involve the extraction of teeth, a procedure which is clearly surgical or operative in nature. In reviewing the existing cases which discuss the informed consent doctrine, we observe that the cases fall into two distinct categories: (1) those involving a surgical procedure in which the patient is anaesthetized, an incision is made, and pieces of tissue, bone, etc. are excised;[13] and (2) those involving the prescription of drugs or those involving the failure to disclose facts which are personal to the physician.[14] In the former category, the doctrine has always been applied, while in the latter it has not. Further, in the cases to which the doctrine applies, the facts frequently reveal situations in which the physician was authorized to perform a particular procedure, but exceeded the scope of that authority by performing additional procedures. *See, e.g., Millard v. Nagle, supra* (in which the physician was authorized to repair the patient's bladder,

[13]   *See, e.g., Bulman v. Myers* and *Sauro v. Shea, supra,* in addition to *Millard v. Nagle, supra,* (concerning the removal of an ovary); *Gouse v. Cassel,* 385 Pa.Super. 521, 561 A.2d 797 (1989), *allocatur granted,* 524 Pa. 608, 569 A.2d 1367 (1989) (involving a splenectomy); and *Moure v. Raeuchele,* 387 Pa.Super. 127, 563 A.2d 1217 (1989), *allocatur granted,* 524 Pa. 629, 574 A.2d 70, 71 (1990) (pertaining to the surgical repair of a damaged fallopian tube).

[14]   *See, e.g., Keech v. Mead Johnson & Co.,* 398 Pa.Super. 329, 580 A.2d 1374 (1990), *Tarter v. Linn,* 396 Pa.Super. 155, 578 A.2d 453 (1990) and *Boyer v. Smith,* 345 Pa.Super. 66, 497 A.2d 646 (1985) (all of which involved the prescription of drugs); and *Kaskie v. Wright,* 403 Pa.Super. 334, 589 A.2d 213 (1991), *reargument denied,* April 29, 1991, slip op. at 8, No. 1412 Philadelphia 1990, (filed February 13, 1991) (opinion by Montemuro, J.) (in which this court declined to expand the doctrine of informed consent to include a duty to advise a patient of information relating to the physician's credentials).

and proceeded to remove the patient's only remaining ovary which was enlarged and which hindered the physician's ability to repair the bladder) and *Moure v. Raeuchele, supra* (in which the physician was authorized to evaluate and locate the cause of the patient's inability to become pregnant, and the physician performed a surgical repair of the patient's damaged fallopian tubes). The only case which indirectly addresses the question of whether a particular procedure constitutes a surgical or operative procedure is *Doe v. Dyer–Goode,* 389 Pa.Super. 151, 156, 566 A.2d 889, 891–892 (1989), *allocatur denied,* 527 Pa. 587, 588 A.2d 509 (1990), in which this court indicated in dicta that the insertion of a needle for the purpose of drawing blood was not the type of surgical procedure that would require an application of the doctrine.[15]

From a review of the above cases, it appears that none of these decisions is similar to the facts presented in this case. Rather, the facts before us are more analogous to a situation in which a physician uses a tool to accomplish a particular task. For example, physicians routinely utilize otoscopes to examine the ears and ear canals of their patients. In performing such an examination, the physician would not be required to specifically obtain the patient's consent to use the otoscope, as this procedure would be covered by the patient's general consent to the examination. Similarly, a gynecologist typically inserts a speculum into a woman's vagina in order to perform a vaginal examination. Again, such a procedure would not require the physician to obtain the patient's specific consent to utilize this tool, as it would be covered by the patient's general consent to the examination.

In comparing the use of forceps with the use of these types of instruments, it would be erroneous to treat a forceps delivery as the type of operative or surgical procedure which requires the physician to obtain additional con-

15. A determination of whether the withdrawal of blood was a surgical procedure was irrelevant to this court's resolution in *Doe v. Dyer–Goode,* since the plaintiff had consented to the procedure.

sent. Like the use of an otoscope or the insertion of a speculum, the use of forceps merely involves the application of a tool to assist the physician in providing treatment. Moreover, the use of forceps is not as drastic a measure as the usual surgical or operative procedure, such as a caesarean delivery, which requires complete anaesthesia of the mother, a surgical incision into the mother's abdominal wall and extraction of the child. The case *sub judice* is also distinguishable from those cases in which the physician exceeded the scope of the consent, since Mrs. Sinclair specifically authorized Dr. Block to perform *any* procedure which was necessary to accomplish the delivery of her child. For these reasons, we agree with the trial court that Dr. Block was not required to obtain Mrs. Sinclair's specific consent to use forceps to deliver the child because she had already given her general consent to the delivery.[16]

■■■ Having made this determination, we must ascertain whether the trial court erred in entering a nonsuit in favor of Dr. Block on the issue of informed consent.[17] A nonsuit

16. In view of our conclusion that specific consent to use forceps was unnecessary, we need not address appellants' arguments relating to the timing of the consent. Appellants suggest in their brief that Dr. Block should have advised Mrs. Sinclair of the risks associated with the forceps delivery and obtained her consent after he realized that the baby was stuck in the birth canal. *See* Appellants' Brief, at 32–33. We reject appellants' position. To explain such a procedure to a woman who has been in labor for several hours, and who is undoubtedly tired and in pain, would be ineffective and inappropriate. Under such circumstances, it is unlikely that the mother is able to think clearly and coherently and weigh the risks. Moreover, such an explanation would place unnecessary and unwarranted stress upon the mother. If an explanation of the delivery process is to be given, it should occur prior to labor, as was done in this case when Mrs. Sinclair signed the general consent form. In this manner, the patient will have the opportunity to reflect upon the various methods of childbirth and discuss these procedures with her obstetrician.

17. Following the close of appellants' case, appellees moved for the entry of a compulsory nonsuit on the issue of informed consent. N.T. 3/7/90, at 136. Appellees' motion was granted by the lower court. *Id.*, at 145. Although the lower court and counsel for the parties have described this ruling as a "compulsory nonsuit" this characterization is erroneous as appellants were permitted to submit their case to the jury for a determination as to whether Dr. Block was negligent in delivering the child. Thus, the lower court did not technically enter a

may only be granted where the plaintiff has failed to establish a right to relief. Pa.R.C.P., Rule 230.1, 42 Pa. C.S.A. and *Bowser v. Lee Hospital,* 399 Pa.Super. 332, 336–38, 582 A.2d 369, 371 (1990). As applied to this case, we determined that it was unnecessary for Dr. Block to obtain Mrs. Sinclair's specific consent to use forceps in the delivery because the use of forceps is not a surgical or operative procedure which requires application of the informed consent doctrine. Further, Mrs. Sinclair testified that she discussed the delivery procedures with either Dr. Block or his partners and authorized them to perform any procedure which was necessary to deliver her child. *See* N.T. 3/7/90, at 119–123. In view of the uncontradicted evidence that Mrs. Sinclair consented to this procedure, we discern no error in the trial court's entry of a nonsuit as to the question of informed consent.[18]

Appellants' sixth issue requires us to determine whether the trial court erred in refusing to instruct the jury on the informed consent doctrine. As explained above, the trial court entered a nonsuit on appellants' informed consent theory because there was uncontradicted evidence that Mrs. Sinclair had consented to the use of any procedure

compulsory nonsuit, but removed appellants' claim based on lack of informed consent from the jury's consideration and refused to instruct the jury thereon because the evidence did not support such a theory of recovery. N.T. 3/8/90, at 210.

18. Appellants also suggest that the trial court erred in entering a nonsuit because appellees presented evidence prior to the entry of the nonsuit. *See* Appellants' Brief, at 31 n. 5. However, appellants admit that they never raised this specific objection at the time the nonsuit was entered. *See* Appellants' Brief, *id.* Accordingly, this argument is deemed waived. *See* Pa.R.C.P. Rules 227.1(b)(1) and Pa.R.A.P., Rule 302(a), 42 Pa.C.S.A. Even if we were to consider this argument, we observe that appellees did not enter a complete defense in this case prior to the close of appellants' case. Rather, for reasons not appearing of record, appellees had to present the testimony of Dr. Schneider during appellants' case. Prior to presenting this testimony, counsel for the parties entered into an agreement and obtained the court's permission to present this witness out-of-turn. *See* N.T. 3/6/90, at 3. Also, this testimony was not directed towards the informed consent issue, but related to appellants' other theories of liability which survived the entry of the nonsuit. Under these particular circumstances, appellees cannot be said to have presented a defense.

with regard to the delivery of her child. Since the question of Mrs. Sinclair's consent no longer remained a viable issue for the jury's consideration, it follows that the trial court did not err in refusing to instruct the jury on this theory. *See Pagesh v. Ucman,* 403 Pa.Super. 549, 589 A.2d 747, 749 (1991) (which indicates that a trial court's failure to give requested points for charge will only be reversed where the instructions are accurate and applicable to the facts of the case), *citing Yost v. Union Railroad Company,* 380 Pa.Super. 236, 244, 551 A.2d 317, 321 (1988), *allocatur denied,* 522 Pa. 603, 605, 562 A.2d 876, 877 (1989). *See also, Commonwealth v. Snoke,* 525 Pa. 295, 301–02, 580 A.2d 295, 298 (1990) (holding that there is no requirement for the trial judge to instruct the jury as requested by either counsel if the issue is not in dispute or the law is not applicable to the case.).

In their seventh issue, appellants' challenge the trial court's preclusion of testimony offered by Mrs. Sinclair relating to the informed consent issue. With regard to this issue, this court has long recognized that "[t]he decision to admit or exclude evidence rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. . . . [T]he court may exclude evidence that is irrelevant, confusing, misleading, cumulative or prejudicial." *Pagesh v. Ucman, supra,* 403 Pa.Super. at 558, 589 A.2d at 751 (citations omitted). Because we find the precluded testimony to be cumulative or repetitive of testimony which had already been given by Mrs. Sinclair, we decline to reverse the trial court's ruling.

At trial, Mrs. Sinclair was questioned as to the events which immediately preceded the delivery of her child and her conversations with Dr. Block. Her testimony was as follows:

Q. If you can, when did you first learn that you were going to the delivery room?

A. About 12:30, 12:45.

Q. And before going to the delivery room, did you have any conversations with Dr. Block concerning the type of delivery that would be performed?

A. No I didn't....

N.T, 3/7/90, at 103. Appellants' counsel then proceeded to ask Mrs. Sinclair whether Dr. Block had explained the risks associated with a forceps delivery to Mrs. Sinclair at any time prior to his application of the forceps. *See id.*, at 104. At this point, appellees' objected on the basis that the question had already been asked and answered by the witness. The trial court sustained the objection. In reviewing this testimony, we find that the trial court did not err in precluding additional testimony since Mrs. Sinclair had previously admitted that she had no conversation with Dr. Block before she entered the delivery room. If no conversation with Dr. Block occurred, then it follows that he could not have explained the risks or anything else to Mrs. Sinclair. Accordingly, the trial court did not err in precluding this additional and cumulative testimony. Moreover, even if it is assumed that the trial court erred in precluding Mrs. Sinclair's testimony, the error must be deemed harmless since it could not have contributed to the verdict or otherwise affected the outcome of the case.[19]

In their final issue, appellants allege that the trial court erred in refusing to remove the nonsuit entered in favor of Philadelphia OB–GYN Group. Appellants concede that this issue is moot in view of our resolution of the previous issues and conclusion that appellants' are not entitled to the award of a new trial. *See* Appellants' Brief, at 40. Accordingly, we need not further address this issue.[20]

**19.** As previously discussed, the trial court entered a nonsuit on appellants' informed consent theory. Consequently, this issue was no longer before the jury and any testimony on this issue would not have been considered by the jury in rendering its verdict. Under these circumstances, the error committed by the trial court, if any, was harmless.

**20.** Of course, if the jury had found Dr. Block to have been negligent in delivering the baby then the trial court's entry of the nonsuit as to POGGL would have been erroneous. At trial, appellants introduced evidence that Dr. Block and the other physicians with whom he

In sum, we determined that appellants did not sufficiently establish good cause for their failure to timely raise their additional grounds for post-trial relief.  Consequently, we found that the trial court did not err in denying appellants leave to file their supplemental post-trial motions.  Similarly, the trial court did not err in concluding that appellants' challenge to the trial court's jury instruction was waived because appellants' failed to properly preserve this issue for review.  We noted, however, that even if we were to address this issue, appellants would not be entitled to relief as the erroneous jury instruction could not have contributed to the verdict in this case.  We further held that the trial court did not err in instructing the jury as to the two schools of thought doctrine, because the experts in this case disagreed as to the type of treatment which should have been administered to Mrs. Sinclair with regard to the delivery of her child.  We next addressed the applicability of the informed consent doctrine to the facts of this case and concluded that it was unnecessary for Dr. Block to obtain Mrs. Sinclair's specific consent to use forceps as Mrs. Sinclair had previously authorized Dr. Block to use any procedure that was necessary to accomplish the delivery of her child.  As a result, we found that the trial court did not err in entering a nonsuit on this issue.  Similarly, the lower court did not err in refusing to charge the jury on the issue of informed consent as this issue had been withdrawn from the jury's consideration and was therefore irrelevant.  Appellants also questioned the trial court's preclusion of testimony with regard to Dr. Block's failure to advise Mrs. Sinclair of the risks associated with a forceps delivery while

practiced had formed a professional corporation.  *See* N.T. 3/2/90, at 7.  Under the Professional Corporation Law, "[t]he professional corporation shall be liable ... for any negligent or wrongful acts or misconduct committed by any of its officers, shareholders, employees or agents while they are engaged on behalf of the corporation in rendering professional services."  *See* 15 Pa.C.S.A. § 2925(b) (which is substantially a reenactment of the prior Professional Corporation Law, Act of July 9, 1970, P.L. 461, No. 160, § 13, 15 P.S. § 2913, which was in effect at the time Paula was delivered by Dr. Block.).  Thus, POGGL would have been held liable if the jury had determined that Dr. Block was negligent.

she was in the delivery room. With regard to this issue, we found no error in the trial court's ruling as the witness had previously given similar testimony which responded to the question. Finally, we determined that while the trial court erred in entering a nonsuit as to POGGL, the error was moot because the jury found that Dr. Block was not negligent. As none of the grounds raised by appellants entitles them to the award of a new trial, the judgments entered in favor of appellees are affirmed.

Judgment and Order affirmed.