## Grant v. Baggott

C.P. of Delaware County, no. 94-9305.

*Richard M. Wiener,* for plaintiffs.
*Patrick Shea,* for defendants.

McGOVERN, *J.,* September 30, 1997—Plaintiffs, Shihomi and Paul Grant, appeal from this court's denial of their motion for a new trial.

Plaintiff, Paul Grant, on Friday, April 16, 1993, at approximately 4:15 p.m., was driving a "loaner" car belonging to a dealership, and his wife, Shihomi, was a passenger. The plaintiffs were stopped in preparation to make a left turn at the intersection of Baily Road and Industrial Drive in the Borough of Yeadon, Delaware County, Pennsylvania. Defendant, Catherine Baggott, skidded on a rain-soaked roadway and struck the rear

of plaintiffs' vehicle. (4/15/96 N.T. 71-77; 4/17/96 N.T. 94-97.) The damage to both vehicles was negligible.[1]

Plaintiff, Paul Grant, complains of recurring neck and left shoulder pain, while plaintiff, Shihomi Grant, complains of continuing lower back pain, which both contend were caused by this incident. The jury determined that the defendant's negligence was not a substantial factor in bringing about harm to the plaintiffs.[2] Plaintiffs' motion for a new trial was denied and this appeal followed, with plaintiffs contending that the trial court erred in not granting a new trial; erred in not finding the verdict against the weight of the evidence; and, erred in precluding from evidence plaintiffs' unpaid medical bills.

## WEIGHT OF THE EVIDENCE

Plaintiffs argue in sum that since they presented expert testimony, including that the collision was the cause of both plaintiffs' pain, the jury was precluded from finding no legal cause. It is so that plaintiffs testified that they experienced aches even though they drove home following the collision and went on about their business.[3] Plaintiffs medicated themselves with Tylenol and then several days following the incident, went to a hospital emergency room. Plaintiffs' attorney, two days following the hospital visit, referred plaintiffs to Dr. Morton Silverman for physical therapy. Plaintiffs were not admitted to the hospital.

---

1. (4/15/96 N.T. 78-79; 4/16/96 N.T. 36; 4/17/96 N.T. 94-99, 104-105, 109-110; exhibit D-4.)

2. The claim against defendant, James Baggott, was dismissed at trial.

3. (4/15/96 N.T. 80-84; 4/16/96 N.T. 113-14.)

The following April through September of 1994, husband-plaintiff complained of pain and received a cortisone injection. (4/15/96 N.T. 87-89.) He complained of numbness in his left arm. He returned again to the physician in 1995. (4/15/96 N.T. 90; 4/16/96 N.T. 3-5.) Husband-plaintiff contends he continues to experience neck pain and numbness in his left arm. (4/15/96 N.T. 86; 4/16/96 N.T. 4-5, 26.) Husband-plaintiff's lawyer also sent him to a Dr. Neil Gottehrer for alleged clicking and tightness in his jaw. (4/15/96 N.T. 90-91; 4/16/96 N.T. 26-27.)

Husband-plaintiff played trumpet with the United States Army National Guard band since 1981, but took advantage of an early discharge program offered to the medically disabled in November 1995, just prior to the time he would have been required to reenlist. (4/16/96 N.T. 18-20.)

Mrs. Grant alleged that because of a sneeze sometime in November or December of 1993, her back gave out, and she also had to return to Dr. Silverman for cortisone injections. (4/16/96 N.T. 119-21.) The wife-plaintiff also returned in November 1995 for treatment of pain. (4/16/96 N.T. 121.) The physician, Dr. Silverman, practices in the field of rehabilitation and therapy.[4] Dr. Silverman was convinced that the husband-plaintiff suffered permanent injury to the neck resulting from a bulging disc. (1/30/96 Silverman, 89-101, 104-114.) He testified the injury was caused by the collision here. (1/30/96 Silverman, 124.) The same physician testified

---

4. Dr. Silverman's testimony was not transcribed as part of the trial record, and, therefore, reference to his testimony is from the sworn videotape deposition transcript which was admitted as exhibit P-4. The same may be said of testimony from Dr. Neil Gottehrer, which transcript was admitted as exhibit P-5.

that the wife-plaintiff had aggravated a herniation of a lumbar disc in the collision, that this injury was aggravated by her sneeze, and was permanent. (4/17/96 N.T. 30-50.)

Plaintiffs also presented the testimony of Dr. Gottehrer, an expert in periodontal medicine, who testified that husband-plaintiff suffered from chronic temporomandibular joint syndrome caused by the collision. (2/1/96 Gottehrer, 12-32.)

Plaintiffs have failed to consider, however, other evidence in this trial which supports the jury's conclusion that the collision was not the legal cause of harm to plaintiffs. The trial court must consider all of the evidence presented to the jury and the court may not displace the jury's finding with its own opinions. *Brown v. Shirks Motor Express,* 393 Pa. 367, 143 A.2d 374 (1958); *Klyman v. SEPTA,* 331 Pa. Super. 172, 480 A.2d 299 (1984).

Further, it is for the jury to evaluate the credibility of witnesses and the jury is free to reject some, all or none of the testimony presented by plaintiffs at a trial. *Goldmas v. Acme Markets Inc.,* 393 Pa. Super. 245, 574 A.2d 100 (1990). The jury, of course, as it was here instructed, has the power to resolve conflicting testimony and determine which of the conflicting testimony, if any, it will accept. *Goldmas v. Acme Markets, supra; Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807 (1984). The jury is also free to reject evidence that is inconsistent with common sense and good judgment. *Plair v. Commonwealth, Pennsylvania Board of Probation and Parole,* 104 Pa. Commw. 297, 521 A.2d 989 (1987). This jury could have easily decided, based on the evidence, that the collision was not the cause of any harm to plaintiffs, or the jury could have easily decided that the plaintiffs had failed to meet their burden

of proof concerning legal cause, particularly if the jury concluded, as it had a right to, that the plaintiffs' witnesses lacked credibility.

Initially, it must be observed that the evidence clearly evinced minimal impact and negligible damage which is inconsistent with wrenching and long-term injuries. (4/15/96 N.T. 78-79; 4/16/96 N.T. 36; 4/17/96 N.T. 94-99, 104-105; exhibit D-4.)[5]

Secondly, the wife-plaintiff testified that her sewing of clothing was strenuous, sometimes lasting 15 hours in one day, seven days a week. Her daughter testified that wife-plaintiff complained "all the time" about her back caused by posture as she sewed. (4/16/97 N.T. 95, 106, 123-29; 4/17/96 N.T. 27.) Wife-plaintiff admitted that she had fallen while roller skating in 1990 and had been treated by a chiropractor for back injury as a result thereof. (4/16/96 N.T. 133-35.) The jury could clearly have concluded that Shihomi Grant's back problems predated the collision and were not aggravated thereby.

Thirdly, husband-plaintiff worked as a locomotive engineer for 25 years, played trumpet in an Army band from 1968 to 1971, and marched in an Army National Guard band during the years between 1981 and 1995, when he retired. Husband-plaintiff also worked as a musician in Atlantic City casinos on a regular basis, both before and after this collision. (4/15/96 N.T. 69-71.) He admitted that the claimed injuries from this collision never interfered with his ability to work. (4/16/96 N.T. 5-6, 10-13.)

---

5. It is interesting to note that the car dealership which owned the vehicle plaintiffs were driving did not even file an insurance claim for property damage and took no part in this lawsuit.

This evidence is inconsistent with a debilitating shoulder and jaw weakness and pain from this collision, particularly where the plaintiff's instrument is a trumpet. Husband-plaintiff's claimed injuries never interfered with his activities in music and the jury could well have concluded that the problems now complained of were nonexistent or simply not caused by defendant's negligence. (4/16/97 N.T. 11-18.) Husband-plaintiff's daughter testified that she could not remember any physical complaints from her father after this collision other than his complaint that his ear popped when he played the trumpet. (4/17/96 N.T. 25-26.) The testimony left one unclear as to whether the husband-plaintiff's retirement from military service was caused by the collision or was to take advantage of a fortuitous opportunity to claim benefits that he would otherwise have to work an additional five years to obtain. The jury, of course, was free to resolve these matters against the plaintiff.

Plaintiffs did not go to the hospital until three days following the collision and husband-plaintiff admitted that his complaints given to the emergency room physician were not the same as his complaints now. (4/16/96 N.T. 33.) Both plaintiffs suffered impeachment through poor memory. (4/15/96 N.T. 78; 4/16/96 N.T. 34-37 as to husband; and 4/16/96 N.T. 111-12, 145-47; 4/17/96 N.T. 95-96 as to wife.)

Five days following the collision, plaintiffs began physical therapy with practitioners referred to them by their attorney in lieu of their own physician and dentist. Such could well further jaundice the jury's view of their credibility and motives for seeking medical treatment, as well as this litigation. Husband-plaintiff admitted suffering rib and back injuries from a prior accident in the summer of 1992. (4/16/96 N.T. 56-59,

62-63; exhibit D-6.) The jury was free to find either a lack of credibility on the part of plaintiffs or that their testimony was not sufficiently convincing to meet their burden of proof.

Plaintiffs' own medical evidence suggests that husband-plaintiff's physical condition and capabilities were within the normal range. (1/30/96 Silverman, 132-46.) Plaintiff's rehabilitative medicine expert testified that he was unaware of any prior or subsequent injuries to plaintiff, Paul Grant, and unaware of any medically disabling circumstances surrounding his discharge from the National Guard. (1/30/96 Silverman, 124-25, 129, 148-49.)

The same physician found no abnormalities in the condition of plaintiff, Shihomi Grant. (4/17/96 N.T. 61-70.) There was evidence of Mrs. Grant's prior back problems and treatment therefor with a chiropractor. (4/17/96 N.T. 70-71.)

Plaintiff's periodontist, Dr. Neil R. Gottehrer, also testified but the jury could very well have decided that husband-plaintiff's difficulties resulted from his trumpet playing rather this incident.[6]

Defendants presented Frederick S. Lieberman M.D., an orthopedic surgeon, who opined that disc protrusions referred to by plaintiffs' physician were probably preexisting. (4/17/96 N.T. 131, 143-45.)

Plaintiff, Shihomi Grant, was likewise seen to be normal with a mild preexisting abnormality. (4/17/96 N.T. 166-74, 178.) While plaintiffs are convinced that their interpretation of the evidence must control, it is clear that the sole and final arbiter of fact is the jury. *Boggavarapu v. Ponist,* 518 Pa. 162, 542 A.2d 516 (1988). There exists in this record an ample basis upon which this jury could have found a lack of credibility concerning plaintiffs' testimony as to any relationship

6. See 2/1/96 Gottehrer, 40, 42-46, 55.

between negligence and any harm caused to either plaintiff. It is not for this court to decide what a jury should have believed, but rather simply to accept what the jury found, so long as it is based in the record or unless there is a lack of evidence therein. *Catalano v. Bujak,* 537 Pa. 155, 642 A.2d 448 (1994).

Plaintiffs contend that *Picca v. Kriner,* 435 Pa. Super. 297, 645 A.2d 868 (1994), and *Rozanc v. Urbany,* 444 Pa. Super. 645, 664 A.2d 619 (1995), support their position and warrant a new trial as to legal cause. The juries in both of those cases found a lack of legal cause. However, the Pennsylvania Superior Court in *Picca v. Kriner, supra,* found it impossible to discern from the verdict which portion of plaintiff's injury was attributed without dispute to defendant's conduct. The jury in *Rozanc v. Urbany, supra,* was found to have entered a verdict against the weight of the trial evidence. The court in *Picca v. Kriner, supra,* found that the plaintiff failed to object to the inconsistency of the verdict before it was certified, thus depriving the trial court of the opportunity to instruct the jury to find liability for harm actually caused by the negligence. In *Rozanc v. Urbany, supra,* a pre-verdict certification objection was found not to be necessary where the claim was that the verdict is against the weight of the evidence. The plaintiffs, in the case at bar, were not required to object before the verdict was certified at trial. *Picca v. Kriner, supra; City of Philadelphia, Police Department v. Gray,* 534 Pa. 467, 633 A.2d 1090 (1993); *Rozanc v. Urbany, supra; Fillmore v. Hill,* 445 Pa. Super. 324, 665 A.2d 514 (1995).

Plaintiffs contend that defendants' expert, Dr. Lieberman, conceded that the injuries complained of by the plaintiffs were attributable to defendant's negligence. The foregoing is not a fair or accurate characterization of the evidence set forth in this record. Defendants' expert, Dr. Lieberman, did testify that in February of

1996, "something was still going on" with both plaintiffs, some three years after the accident. (4/17/96 N.T. 180-81, 188-89.) That testimony, however, does not give rise to an irrefutable conclusion that defendant's conduct was the legal cause of plaintiffs' harm, particularly when the physician could find no objective basis for plaintiffs' contentions. There is no uncontroverted medical testimony concerning the causal relationships of negligence and plaintiffs' harm in the instant record. *Rozanc v. Urbany, supra* at 649, 664 A.2d at 621, citing *Neison v. Hines*, 539 Pa. 516, 653 A.2d 634 (1995). The jury, however, is not required to accept even uncontradicted testimony and is free to accept some part, all or none of that testimony. *Gallagher v. Marguglio*, 429 Pa. Super. 451, 632 A.2d 1309 (1993). Further, the jury might have concluded that the negligence bore but an insignificant relationship to plaintiffs' complaints. Negligence must be a substantial factor in causing harm for the plaintiffs to recover. *Gigliotti v. Machuca*, 409 Pa. Super. 50, 597 A.2d 655 (1991). Where the plaintiff's injury would have been sustained even in the absence of defendant's negligence, then legal cause cannot be found. *DeAngelis v. Burns*, 404 Pa. 230, 171 A.2d 762 (1961); Restatement (Second) of Torts §432. The record in the case at bar supports the jury's conclusion that any causal relationship was insignificant, or a conclusion that factors other than negligence caused plaintiffs' harm or a conclusion that plaintiffs suffered no harm caused by negligence.

## PRECLUSION OF MEDICAL EXPENSES

Plaintiffs argue that the trial court erred in refusing to allow unpaid medical bills into the evidence. Plaintiffs sought to present evidence of expenses in excess of

those covered by their State Farm *automobile insurance* policy.

Section 1722 of the Motor Vehicle Financial Responsibility Act, 75 Pa.C.S. §1701 et seq., provides that those persons eligible for benefits (as defined in section 1719 of the Act) are precluded from recovering the amount of benefits "paid or payable" pursuant to the Act or any "program, group contract or other arrangement for payment of benefits" as defined in section 1719.

Defendants contended at trial that such medical bills were inadmissible because plaintiff, Paul Grant, belonged to his employer's HMO plan. That plan allegedly refused to pay those bills. (4/17/96 N.T. 5-9.) Plaintiffs sought treatment from a physician referred to them by their lawyer who allegedly suggested that Dr. Silverman's charges would be paid by plaintiffs' motor vehicle insurance carrier. (4/15/96 N.T. 84-85.) Plaintiffs did not seek treatment from their regular family physician, the expenses for which would have been covered by the aforementioned HMO plan with SEPTA (plaintiff, Paul Grant's, employer). (4/15/96 N.T. 84-85.)[7] Plaintiffs fail to present any legal support for their position.

The exhibit packet containing these alleged excess and unpaid bills contains four health insurance claim forms completed by care providers giving only identification numbers for plaintiffs to indicate the insurance carrier, and on three of these forms, plaintiffs stated that there was "no additional health benefit plan" for the patient. (Exhibits P-12, P-17, P-19 and P-23.) The absence on these forms of the suggestion that there

_____

7. Plaintiff, Paul Grant, contended that his excess medical care costs came to some $16,796.12. (4/17/96 N.T. 8.) The excess for plaintiff, Shihomi Grant, was alleged to be $9,474.

was another carrier undermines plaintiffs' argument that the providers wrongly billed State Farm for expenses that might have been covered by plaintiff's employer's HMO. Plaintiffs also proffered "bills" with neither letterhead nor signature nor name of medical provider, but simply addressed to plaintiffs' attorney. (Exhibits P-9 and P-20.) Some of the documents, P-28 and P-29, suggest that those sums had been paid by State Farm and, therefore, would be precluded under the statute.

Any submission of these bills to the jury would be confusing and perhaps misleading. *Carlson v. Bubash,* 432 Pa. Super. 514, 639 A.2d 458 (1994). Simply stated, however, there is no evidence that these alleged excess expenses were not payable under the provisions of plaintiff, Paul Grant's, employer's HMO plan. They, therefore, were not presented to this jury.

The Pennsylvania Superior Court in *Carlson v. Bubash, supra,* citing *Martin v. Soblotney,* 502 Pa. 418, 466 A.2d 1022 (1983), held that medical expenses paid or payable by plaintiff's insurer were inadmissible as to pain and suffering, observing that there is "nothing to suggest [in the language of the amended section 1722] that a court such as this would err in refusing to admit medical bills as evidence of special damages." *Carlson v. Bubash, supra* at 521, 639 A.2d at 461; *Brown v. Travelers Insurance Company,* 355 Pa. Super. 535, 513 A.2d 1051 (1986). The decisions in *Carlson v. Bubash, supra,* and *Gigliotti v. Machuca, supra,* allow a balancing of interests of the plaintiffs and defendants in ruling upon admissibility where medical bills may be confusing or unclear to the jury, as is the case sub judice. There are no cases distinguishing, overruling or inconsistent with *Carlson v. Bubash, supra,* which seems to place no restriction on the preclusion of medical bills which have been paid or are payable, relevant, of course, to the issue of damages.

Plaintiffs, in the case at bar, however, face a threshold problem which they have not surmounted. Plaintiffs have failed to meet their burden of demonstrating that these benefits were not either paid or payable pursuant to section 1722 of the Act. The word "payable" in this context has been defined by the Pennsylvania Superior Court as "[c]apable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable." *Schroeder v. Schrader,* 453 Pa. Super. 59, 69, 682 A.2d 1305, 1310 (1996), citing Black's Law Dictionary 1016 (5th ed. 1979). The plaintiffs' bare assertion that the treatment was outside of plaintiff's employer's HMO plan was not established, nor is there any evidence that a proper legal interpretation of that plan supports plaintiffs' conclusion, or that there is no source to pay the bills in question. Plaintiffs have presented not a scintilla of evidence suggesting that these bills were not payable, or that claims were made through the HMO plan, or that claims were denied by the HMO plan or that there is legal authority supporting their position. Mere allegations are not sufficient.

Pursuant to the former No-Fault Motor Vehicle Insurance Act, 40 Pa.C.S. §1009.101-701 (repealed), the law provided that when a no-fault insured voluntarily failed to act in securing HMO entitlements to medical benefits, the no-fault carrier could not be held liable for the foregone HMO benefits. *Grant v. Travelers Insurance Company,* 343 Pa. Super. 310, 494 A.2d 862 (1985); *Carr v. Erie Insurance Company,* 342 Pa. Super. 429, 493 A.2d 97 (1985). The rationale is similar here where it would be contrary to the stated statutory policy to allow plaintiffs to recover medical benefits in the instant lawsuit without a preliminary determination having been made that those benefits were not recoverable from any other available source of insurance coverage.

The burden of acting, as well as the burden of proof, must in all fairness rest upon the plaintiffs.

The admission or exclusion of evidence is left to the sound discretion of the trial court and such will not be disturbed absent a clear abuse of discretion. *Henry v. McCrudden,* 133 Pa. Commw. 231, 575 A.2d 666 (1990), *appeal denied,* 526 Pa. 651, 585 A.2d 470 (1990). A wide degree of latitude concerning evidentiary decisions is vested in the trial court. *Lynch v. McStome & Lincoln Plaza Associates,* 378 Pa. Super. 430, 548 A.2d 1276 (1988). The trial court may exclude evidence that is irrelevant, confusing, misleading, cumulative or prejudicial. *Sinclair v. Block,* 406 Pa. Super. 540, 594 A.2d 750 (1991); *Concorde Investments Inc. v. Gallagher,* 345 Pa. Super. 49, 497 A.2d 637 (1985).

Even if plaintiffs' contentions are correct, they have endured no prejudice because, as plaintiffs in their arguments at trial made clear, the sole relevance of these bills was to the issue of damages. This jury never reached that issue. There is, therefore, no basis for a new trial here. *USF&G v. Royer Garden Center,* 143 Pa. Commw. 31, 598 A.2d 583 (1991).

The preclusion of these bills was, in any event, consistent with Pennsylvania law and stated public policy concerning double recovery of damages. It is respectfully suggested there was no error or abuse of discretion in the preclusion of evidence concerning the evidence of these medical bills.

## CONCLUSION

A new trial must rest upon the foundation that the verdict was against the clear weight of competent evidence admitted at trial or some clear error of law or palpable abuse of discretion on the part of the trial court. *Klyman v. SEPTA, supra; Tyus v. Resta,* 328 Pa.

Super. 11, 476 A.2d 427 (1984). Any abuse of discretion must rest upon clear and convincing evidence and if there is any valid ground in the record for the court's decision, it will be upheld. *Dalton v. Dalton,* 409 Pa. Super. 258, 597 A.2d 1192 (1991); *Exner v. Gangewere,* 397 Pa. 58, 152 A.2d 458 (1959). There was none such here.

The record of this trial supports the court's evidentiary decisions and presents a sufficient basis for the jury's verdict. Therefore, it is respectfully suggested that it was appropriate for this court to deny plaintiffs' post-verdict motion for a new trial.